MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2015 ME 63
Docket:       BCD-14-294
Argued:       April 9, 2015
Decided:      May 12, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

PAUL REMMES et al.

v.

THE MARK TRAVEL CORPORATION et al.

ALEXANDER, J.

[¶1]   Plaintiffs Paul and Holly Remmes and Robert H. and Lucy Begin appeal from a judgment entered in the Business and Consumer Docket (*Horton, J.*) granting The Mark Travel Corporation's motion for summary judgment.   On appeal, the plaintiffs contend that the trial court erred by determining that (1) the plaintiffs' travel agent was not an agent of Mark Travel; (2) the plaintiffs' original hotel accommodations, arranged through Mark Travel, were properly rescinded for failure of consideration; and (3) releases signed by the plaintiffs as a precondition for rebooking their accommodations barred their claims against Mark Travel.

[¶2]   The trial court correctly determined that the plaintiffs' breach of contract and other claims against Mark Travel failed as a matter of law because the plaintiffs' travel agent never acted as Mark Travel's agent and because Mark Travel did not authorize the travel agent to act on its behalf, *see* Restatement

2

(Third) of Agency § 3.14 cmt. c (2006), ratify the travel agent's fraudulent conduct, *see Perkins v. Philbrick*, 443 A.2d 73, 75 (Me. 1982), or hold the travel agent out as its agent, *see Levesque v. Cent. Me. Med. Ctr.*, 2012 ME 109, ¶ 10 n.7, 52 A.3d 933. Therefore, we affirm the trial court's judgment.

## I. CASE HISTORY

[¶3] Viewing the record in the light most favorable to the non-prevailing parties, *see Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733, the summary judgment record contains the following facts, which are undisputed unless otherwise noted. Plaintiffs Paul and Holly Remmes and Robert H. and Lucy Begin are residents of Maine. The Mark Travel Corporation is a corporation with its principal place of business in Milwaukee, Wisconsin. It sells leisure tour and travel products to consumers either directly or through the consumers' travel agents. Mark Travel, at times, did business under the names "Funway Holidays Funjet Inc." and "Funjet Vacations," but is one entity.

[¶4] Beth Rogers was a travel agent who operated a travel agency in Saco called TravelWise.[1] There is no evidence in the record that Rogers or TravelWise ever claimed to be an agent of Mark Travel or that any contract creating an agency relationship existed between Rogers and/or TravelWise and Mark Travel.

---

[1] Although Rogers was named as a defendant ("Beth M. Rogers, a/k/a Beth McInnis, d/b/a TravelWise") in the civil suits that resulted from the facts underlying this matter, Rogers did not appear in either action.

Likewise, there is no evidence in the record that Mark Travel ever claimed that Rogers or TravelWise was its agent for any purpose.

[¶5]  In August or September of 2011, the Remmeses contacted Rogers at TravelWise seeking an all-inclusive vacation for a party of nine.  Rogers told the Remmeses about a resort in the Dominican Republic that could accommodate the party, which Rogers later advised could be booked only through a travel agent. Rogers advised the Remmeses that they could reduce their costs if they paid by check rather than credit card.  The Remmeses then gave Rogers a check payable to TravelWise for $26,517, covering the full cost of airfare and accommodations at the resort for the group.

[¶6]  The Remmeses invited the Begins to join them on the trip, and the Begins contacted Rogers and asked her to book them the same trip.  Again, she recommended that they pay by check to save money, and the Begins gave her a check payable to TravelWise for $8,801.92, covering their airfare and resort accommodations.  The trip was to begin the week of June 20, 2012.

[¶7]  Rogers booked air travel and lodging at the resort for the plaintiffs through Mark Travel.  Rogers paid to Mark Travel some of the funds the plaintiffs paid to her—about $10,000 of the Remmeses' payment and about $4,000 of the Begins' payment—to pay for the airfare.  Rogers paid Mark Travel for the lodging by using the credit card information of other TravelWise clients, without those

4

clients' knowledge or consent.  The record does not reveal what happened to the rest of the money the plaintiffs gave Rogers.  Believing that it had received proper payment from Rogers, Mark Travel sent "E-Travel" documents to Rogers, who in turn gave them to the plaintiffs.[2]

[¶8]  In early June of 2012, Mark Travel learned of the credit card fraud on these and other vacations Rogers had booked.  Mark Travel then reversed the credit card charges and canceled the plaintiffs' reservations at the resort, consistent with its policy for unpaid bookings.  Mark Travel had not yet paid the resort, and it did not incur any fees, penalties, or costs in cancelling the reservation.

[¶9]  On or about June 8, 2012, the plaintiffs, after hearing rumors about Rogers and TravelWise, contacted Mark Travel to check on their reservations.  The plaintiffs were initially told that each of their reservations was "all set," but later that day they were told that there could be "a problem" with their reservations.[3] On June 11, the week before their planned trip, an employee from Mark Travel told the plaintiffs that the lodging payments sent by TravelWise had been

---

[2]  The parties dispute the character of these E-Travel documents.  The plaintiffs characterize the documents as tickets and vouchers that, standing alone, would gain them entry to their lodging, even after the reservation was later cancelled. Mark Travel characterizes the documents as providing an itinerary, confirmation numbers, and proof that the reservation had been made, that once the reservation was cancelled the documents meant nothing, and  that  all the plaintiffs needed to do to gain entry to their lodging was give their names.  However, the character of the documents is not a material fact.

[3]  Mark Travel denies that any employee told the plaintiffs that their lodging reservations were all set or otherwise, but the distinction is not material.

fraudulent, and that their resort reservations had been or would be cancelled for nonpayment.[4]

[¶10]  Mark Travel agreed to assist the plaintiffs in rebooking their resort accommodations, but only if they paid for the lodging and signed a release.  On June 14, Paul Remmes and Robert Begin each signed a "Release and Authorization" releasing and discharging claims against Mark Travel and authorizing Mark Travel to charge their credit cards for the outstanding amounts due for their resort accommodations: $16,926.15 for the Remmeses and $4,215.31 for the Begins.[5]  Mark Travel was able to rebook the plaintiffs' lodging at the same rate as the original booking.

---

[4]  The plaintiffs state that Mark Travel threatened to cancel the reservations if they did not sign releases and pay for the rooms. Mark Travel states that it informed the plaintiffs that the resort reservations had already been cancelled.  Again, however, the distinction is not material.

[5]  The exact language of Paul Remmes's release is as follows:

> I, Paul Remmes, the undersigned, agree to release and forever discharge The Mark Travel Corporation, its officers, directors, agents, representatives, employees, successors, assigns, and affiliate and subsidiary corporations from any and all claims, demands and actions of whatever kind and character.

> I previously made a travel reservation through a travel agency who I believe fraudulently took payment in cash and absconded with the money.  I am now making a similar if not exact travel reservation through Funjet Vacations.  I have attached a credit card authorization form and a copy of my Driver's License each of which I have personally signed under my own free will.  In addition, attached please find a personally signed Funjet Vacations Bill of Rights which I have read and agree to.

> I acknowledge that I have carefully read this statement.  I am of legal age and am legally competent to execute this Release and do so of my own free will and accord.

Robert Begin signed a similar release.  Each release was accompanied by a credit card authorization.

[¶11] The Remmeses and the Begins each filed a complaint against Mark Travel and Rogers in the Superior Court (York County) on January 30, 2013, and April 18, 2013, respectively. Each complaint contained three counts. Count I alleged a breach of contract by Mark Travel and Rogers, alleging that Rogers was acting as Mark Travel's agent when she collected payment for the travel accommodations and provided to the plaintiffs airline tickets and documents confirming their resort lodging, and that the plaintiffs had wrongfully been forced to pay twice for their lodging. Each complaint sought damages for the amounts the plaintiffs had paid directly to Mark Travel.

[¶12] Count II alleged "economic duress," asserting that Mark Travel was responsible for the actions of its alleged agent, Rogers, and that the releases had been signed under duress. Count II sought to void the releases.

[¶13] Count III set out a private claim pursuant to the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S. §§ 205-A to 214 (2014), alleging that Mark Travel violated the UTPA and that Mark Travel's conduct was "egregious and unconscionable and exceeds the bounds of human decency." Each complaint sought damages under Count III for the amount the plaintiffs paid directly to Mark Travel, plus attorney fees, costs, and punitive damages.

[¶14] Mark Travel answered each complaint and stated four affirmative defenses: failure to state a claim upon which relief may be granted, improper

venue, lack of personal jurisdiction over Mark Travel, and lack of subject matter jurisdiction. The cases were transferred to the Business and Consumer Docket and consolidated.

[¶15]   The plaintiffs filed a motion for summary judgment. Mark Travel filed an opposition and two cross-motions for summary judgment. After a hearing, the court entered an order denying the plaintiffs' motion for summary judgment and granting Mark Travel's cross-motions for summary judgment. As to the breach of contract claims, the court noted that Mark Travel and the plaintiffs entered into two contracts with each other: the first contract was created when Mark Travel "accepted their booking and issued the [p]laintiffs travel documents for their vacation, including lodging at [the resort]," and the second was created when Mark Travel accepted payments directly from the plaintiffs and rebooked their lodging. The court held that Mark Travel "rescinded the lodging portion of the [first] contract for failure of consideration after determining that payment for [the] lodging had been fraudulent[]." It went on to hold that Mark Travel was entitled to rescind the contract because Rogers was not acting as Mark Travel's agent when she caused the failure of consideration, and therefore Mark Travel had not breached the first contract. The court determined that Rogers was the plaintiffs' agent, not Mark Travel's agent, stating:

there is nothing in the record indicating Mark Travel authorized [TravelWise] to issue tickets or collect payments on its behalf. In fact, after [TravelWise] purported to pay for [the p]laintiffs' travel, it was Mark Travel that issued tickets and lodging vouchers to [the p]laintiffs. TravelWise never issued tickets or vouchers to the [p]laintiffs.

[¶16] The court also concluded that Mark Travel was entitled to summary judgment on the alternative ground that the releases executed by the plaintiffs barred their claims. Additionally, the court entered summary judgment against the plaintiffs on their claims for economic duress and violation of the UTPA.

[¶17] Separately, the plaintiffs filed motions for default judgment against Rogers. The court granted the plaintiffs' motions for default judgment against Rogers, entered a judgment of default against Rogers, and awarded the Begins $4,215.31 with pre- and post-judgment interest and costs, and the Remmeses $16,926.15 with pre- and post-judgment interest and costs. The plaintiffs then brought this appeal from the judgment in favor of Mark Travel.

## II. LEGAL ANALYSIS

[¶18] Summary judgment is appropriate when review of the parties' statements of material facts and the record evidence to which the statements refer, considered in the light most favorable to the nonprevailing party, demonstrates that there is no genuine issue of material fact that is in dispute and the prevailing party

is entitled to judgment as a matter of law. *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484; *Beal*, 2010 ME 20, ¶ 11, 989 A.2d 733.

[¶19] When the material facts are not in dispute, we review de novo the trial court's interpretation and application of the relevant statutes and legal concepts. *See Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 7, 17 A.3d 667. "Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*." *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646.

[¶20] As already noted, there is nothing in the record here indicating that a contract or any agency relationship existed between Rogers or TravelWise and Mark Travel. Although the question is one of first impression in Maine, other courts have found that an agency relationship between a travel agent and a travel provider, usually an airline, existed only when there was a written contractual relationship. *See, e.g.*, *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 60-61 (Mo. 1993) (holding that a travel agent was an airline's agent when there was a written contract ("Certificate of Appointment") between them); *Rappa v. Am. Airlines, Inc.*, 386 N.Y.S.2d 612, 613-15 (N.Y. Civ. Ct. 1976) (finding that a travel agent was an airline's agent when there was a sales agency agreement between them). The Restatement (Third) of Agency notes:

> [A] travel intermediary who purchases a plane ticket for a prospective traveler acts as the prospective traveler's agent in buying the ticket. If an airline authorizes the intermediary to issue tickets on its behalf and to collect and hold customer payments, the intermediary acts as the airline's agent in so doing.

Restatement (Third) of Agency § 3.14 cmt. c (giving an example of a situation where an agency relationship is ambiguous because "[t]he same actor may occupy different roles at successive points in an ongoing interaction among the same parties"); *see also, e.g.*, *Simpson v. Compagnie Nationale Air France*, 248 N.E.2d 117, 120 (Ill. 1969) (characterizing a travel agent as a broker and finding he was the agent of the traveler for whom he planned a specific vacation). Here, under the principle articulated in comment c to section 3.14 of the Restatement, the record establishes as a matter of law that Rogers was the plaintiffs' agent because she purchased the travel packages on their behalf and the exception to this general rule did not apply.

[¶21]   With no evidence of any contractual relationship, if any agency relationship is to be demonstrated, it must be demonstrated on the theory of ratification or apparent agency. "For ratification of an agent's actions to occur, it is necessary that all material facts be known by the principal." *Perkins*, 443 A.2d at 75. Here, Mark Travel did not learn of Rogers's credit card fraud until about the same time the plaintiffs learned of it in June of 2012. Therefore, Mark Travel did not ratify Rogers's fraudulent conduct.

[¶22]   A claim of apparent agency is proved by the following elements: "(1) the defendant either intentionally or negligently held a person out as [its] agent for services, (2) the plaintiff did in fact believe the person to be an agent of the defendant, (3) the plaintiff relied on the defendant's manifestation of agency, and (4) the plaintiff's reliance was justifiable." *See Levesque*, 2012 ME 109, ¶ 10 n.7, 52 A.3d 933; *see also Williams v. Inverness Corp.*, 664 A.2d 1244, 1246-47 (Me. 1995) (citing Restatement (Second) of the Law of Agency § 267 (1958)). Apparent authority is authority that, although not actually granted, the principal knowingly permits the agent to exercise or that the principal holds the agent out as possessing. *Williams*, 664 A.2d at 1246. Apparent authority exists only when the conduct of the principal leads a third party to believe that a given party is the principal's agent. *Id.*; *Libby v. Concord Gen. Mut. Ins. Co.*, 452 A.2d 979, 982 (Me. 1982).

[¶23]   Here there is no evidence of conduct by Mark Travel that could have led the plaintiffs to believe that Rogers was an agent for Mark Travel. The record demonstrates, without dispute as to material fact, that the plaintiffs failed to establish the necessary elements for a prima facie claim of apparent agency to get that claim to a fact-finder. On the record presented, Rogers was acting as a travel agent for the plaintiffs, not a sales representative for Mark Travel. *See* Restatement (Third) of Agency § 3.14 cmt. c.

[¶24]  As the plaintiffs recognized at oral argument, the question of Rogers's agency is determinative of their claims, and thus we need not reach their other arguments on appeal.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

James L. Audiffred, Esq., Saco, for appellants Paul Remmes, Holly Remmes, Robert Begin, and Lucy Begin

Christine Kennedy-Jensen, Esq., Douglas, Denham, Buccina & Ernst, Portland, for appellee The Mark Travel Corporation

Business and Consumer Docket docket numbers CV-2013-29 & 34
FOR CLERK REFERENCE ONLY