MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 56
Docket:      Ken-16-274
Argued:      February 7, 2017
Decided:     March 28, 2017

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ALESHIA D. DIVINEY

v.

UNIVERSITY OF MAINE SYSTEM

ALEXANDER, J.

[¶1]  Aleshia D. Diviney appeals from the grant of summary judgment for the University of Maine System (UMS) by the Superior Court (Kennebec County, *Mullen, J.*).  The court concluded that Diviney's tort claim was time barred by the Maine Tort Claims Act, because it was not filed within the statutory 180-day filing period pursuant to 14 M.R.S. § 8107 (2016), and that the statutory "good cause" justification for the delay in filing could not be demonstrated.

[¶2]  On appeal, Diviney argues that the court erred (1) because the issue of good cause presented a disputed material fact not appropriate for resolution on summary judgment; (2) in its "good cause" determination applying the plain language of section 8107 to the facts in the record; and

(3) by failing to interpret section 8107's filing period to commence from the date the "good cause" for delay has been removed.[1] We affirm the judgment.

## I. CASE HISTORY

[¶3] The following facts are viewed in the light most favorable to Diviney—the party against whom summary judgment was entered. *See Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 18, 116 A.3d 466.

[¶4] On January 17, 2014, Aleshia D. Diviney was injured when she slipped and fell on ice outside of her dormitory, located on the University of Southern Maine (USM) Gorham campus. On February 3, 2014, Diviney's father emailed USM's risk management office about his daughter's injury. He explained that his daughter sustained a broken leg, torn ligaments, and required surgery because of the injuries. He also stated that he hoped the University would assume some degree of responsibility, because the incident stemmed from maintenance of walks, steps, and parking areas on the campus.

[¶5] William Wells, Associate Vice President of Operations and Risk Management for USM, responded to the father's email on February 6, 2014. In his email Wells expressed his sympathy for Diviney, and requested that she

---

[1] Despite Diviney's argument that the 180-day filing period should be tolled where "good cause" is established but is ultimately removed before the 180-day filing period has expired, title 14 M.R.S. § 8107 (2016) does not contain language permitting such tolling. Therefore, this contention is not discussed further.

file an incident report. He also inquired as to whether she intended to file a claim. Diviney's father responded on February 9, 2014, explaining that he and his daughter would not be involving legal counsel "because of . . . [their] faith that the University would be willing to satisfy the medical and other related expenses . . . related to this incident without the need for legal counsel."

[¶6] Wells did not respond to the father's email or acknowledge receipt of Diviney's incident report until March 18, 2014. He explained that "for whatever reason," USM had not received the previous correspondence or the incident report, but he assured the father that the University was not ignoring the situation. Between March 20 and March 28, 2014, Diviney's father and Wells continued to email about documentation needed for the investigation of the incident, including medical releases and Diviney's incident report.

[¶7] On March 28, 2014, Wells referred Diviney's claim to the University of Maine System's risk management department, which referred the case to John Glover at Cross Insurance.[2] That same day, Glover attempted to reach Diviney by phone and email to request a recorded statement about the incident and her treatment. Sometime between March 28 and April 2, 2014, Glover spoke with Diviney by phone to confirm a date to take her

---

[2] Cross Insurance provides third-party administration of injury claims involving the University of Maine System.

4

recorded statement. During that phone call Glover "advised [Diviney] that although she would probably not recover much from her claim, she would probably recover something," and further stated that he would "get this worked out for [her]."[3]

[¶8] By April 2, 2014, Glover had interviewed Diviney and also attempted to reach a witness who was with Diviney at the time of her fall. Due to "a series of issues," however, Glover did not get a statement from that witness until May 5, 2014. The delay was due, in part, to Glover's time out of the office.

[¶9] Between March 28, 2014, and May 8, 2014, Glover emailed Diviney four times and received two emails from her. Glover also received a letter and two emails from Diviney's father and emailed him twice between April 10 and May 8, 2014. In a May 4, 2014, email, Diviney's father asked for an update on his daughter's case, at which time Glover advised that none could be provided

---

[3] UMS denied that these statements were made, but recognized that "good cause" existed during the time while Diviney and her father were in communication with UMS representatives before her claim was denied. Diviney stated that she interpreted the statements to mean that she would probably not receive extra compensation for pain and suffering, but her medical bills—which were large and uninsured—would be mostly covered. Diviney claimed that because she did not expect to receive extra compensation for pain and suffering, these statements did not give her cause for concern at that time.

until the statement could be taken from the witness who was with Diviney at the time of her fall.

[¶10] By letter dated May 14, 2014, Glover denied Diviney's claim and explained the reasons for doing so. At that point, there were sixty-three days remaining of the 180-day notice deadline. On October 31, 2014—well past the mid-July notice deadline and 170 days after Diviney's claim had been formally denied—Diviney, now represented by counsel, served a formal notice of claim pursuant to 14 M.R.S. § 8107.

[¶11] On September 14, 2015, Diviney filed a complaint in the Superior Court (Kennebec County) alleging premises liability against the University of Maine System, the University of Southern Maine, and the State of Maine.[4] By answer dated September 30, 2015, UMS asserted several affirmative defenses, including noncompliance with the notice requirements of 14 M.R.S. § 8107, arguing that Diviney's notice was untimely. The UMS moved for summary judgment, asserting untimely notice on December 4, 2015. That same day, by agreement with Diviney, UMS filed a motion to stay deadlines associated with the case until the court ruled on the motion for summary judgment.

---

[4] The State was subsequently dismissed from the case by agreement of the parties.

[¶12]  On April 29, 2016, the court heard arguments on the motion.  The court granted UMS's motion for summary judgment on May 17, 2016.  The court concluded that the father's February 3, 2014, email did not comply with the notice requirements of the Maine Tort Claims Act; Diviney was unequivocally notified that her claim was denied with over sixty days remaining before the 180-day notice deadline; Diviney did not file notice satisfying the statutory requirements until after the 180-day deadline had passed; and Diviney could not show "good cause" to excuse her failure to timely file notice.  Diviney brought this timely appeal.  *See* M.R. App. P. 2(b)(3); 14 M.R.S. § 1851 (2016).

## II.  LEGAL ANALYSIS

[¶13]  Diviney argues that the trial court's grant of summary judgment was in error because the question of "good cause" justifying her filing of the notice outside the 180-day statutory filing period presented genuine issues of material fact, and further argues that the court erred in its application of the statute, 14 M.R.S. § 8107, to the facts in the record.

[¶14]  We review the entry of summary judgment de novo for errors of law.  *See Brown v. Delta Tau Delta*, 2015 ME 75, ¶¶ 8-9, 118 A.3d 789.  We review the facts from the summary judgment record in the light most

favorable to Diviney—the party against whom summary judgment was entered—to determine whether a genuine issue of material fact exists and whether UMS was entitled to judgment as a matter of law. *See Remmes*, 2015 ME 63, ¶ 18, 116 A.3d 466; *Lockridge v. University of Maine Sys.*, 597 F.3d 464, 469 (1st Cir. 2010). "When the defendant is the moving party, [it] must establish that there is no genuine dispute of fact and that the undisputed facts would entitle [it] to judgment as a matter of law." *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 8, 105 A.3d 439. "It then becomes the plaintiff's burden to make out the prima facie case and demonstrate that there are disputed facts." *Id.*

[¶15] Tort actions against a governmental entity are governed by the Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118 (2016). Title 14 M.R.S. § 8107(1) sets forth the requirements for properly filing notice under the Act, requiring that

> [w]ithin 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have been reasonably filed within the 180-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice . . . .

The statute defines "good cause" in the following manner:

> "Good cause" as used in subsection 1 includes but is not limited to any cases in which any official of the governmental entity whose duties and authority include the settlement of tort claims or any tort liability insurer of the governmental entity makes direct oral or written contacts with the claimant or the claimant's personal representative or attorney, including payments to or on behalf of the claimant, that contain or imply a promise of coverage sufficient to cause a reasonable person to believe that the losses for which no timely notice claim is filed would be covered . . . .

*Id.* § 8107(5).

[¶16]  We have interpreted "good cause" to include situations where the plaintiff was unable to file a notice of claim or was "in some meaningful way prevented from learning of the information forming the basis of [her] complaint." *Smith v. Voisine*, 650 A.2d 1350, 1352 (Me. 1994).  If "good cause" is shown for why notice reasonably could not have been filed within the 180-day filing period, notice may be filed within two years from when the cause of action accrued.  14 M.R.S. § 8110.

[¶17]  "The good cause exception is interpreted narrowly since the Maine Tort Claims Act is a 'limited relaxation' of common-law sovereign immunity." *Peters v. City of Westbrook*, 2001 ME 179, ¶ 6, 787 A.2d 141.  "The immunity exceptions are strictly construed so as to adhere to immunity as the general rule." *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 9, 3 A.3d 390.

[¶18] Diviney argues that "good cause" presents a factual issue not proper for resolution on summary judgment and cites two Superior Court cases in support of that contention. *See Thuotte v. Perry*, No. CV-07-422, 2008 Me. Super. LEXIS 138 (June 26, 2008); *Wildes v. City of Portland*, No. CV-04-595, 2005 Me. Super. LEXIS 30 (Jan. 28, 2005). While the Superior Court in these two cases determined that "good cause" presented a factual issue that precluded summary judgment, the facts of this case are easily distinguished. As the trial court observed, unlike in *Thuotte* and *Wildes*, where there was a dispute about whether "good cause" existed, here there is no dispute that "good cause" existed while Diviney and her father were in communication with University representatives, but "good cause" was unequivocally removed with over two months remaining to file proper notice. Accordingly, this case is not factually analogous to *Thuotte* and *Wildes*.

[¶19] It is undisputed that Diviney's injury occurred on January 17, 2014, and that notice was filed on October 31, 2014, outside the 180-day notice period. Although UMS recognized that "good cause" existed during the period that Diviney and her father were communicating with UMS representatives, that fact is not material, because "good cause" was indisputably revoked when Glover denied Diviney's claim in writing. When

10

Diviney's claim was denied, there were sixty-three days remaining within which she could have filed proper notice, which she failed to do.

[¶20]  "Rule 56(e) imposes upon [the opponent of the motion] the obligation to come forward with affidavits or other materials setting forth by competent proof specific facts that would be admissible in evidence to show . . . that a genuine issue of fact exists." *Bangor & Aroostook R.R. Co. v. Daigle*, 607 A.2d 533, 535-36 (Me. 1992); *see also Watt v. UniFirst Corp.,* 2009 ME 47, ¶ 21, 969 A.2d 897.  Here, Diviney's affidavit and her father's affidavit constituted the total universe of evidence that she presented to the trial court. Those affidavits contained no information about why Diviney could not file the necessary notice in a timely manner.  This is demonstrated by the trial court's conclusion that it "remains a mystery to this day" why it took 170 days for Diviney to file the notice after her claim was denied.  Her statements that she was a freshman in college, that she was unable to put weight on her left leg for five weeks following surgery,[5] and that "it would take [her] 170 additional days to find a lawyer who would take [her] case and serve the necessary notice" are insufficient to generate a factual dispute about whether

---

    [5] Diviney underwent surgery for her injuries on January 31, 2014.  Five weeks from the date of her surgery was March 7, 2014, meaning that at the time her claim was denied she had been able to bear weight on both legs for over two months.

there was "good cause" for "why notice could not have been reasonably filed within the 180-day limit."

[¶21] The record includes no explanation of the efforts Diviney, her father, or anyone else made to find a lawyer after her claim was denied. Nor was there any evidence offered that lawyers willing to take the case were unavailable, despite efforts to locate them. Even if Diviney had been unable to find a lawyer to take her case, there is nothing in the record to explain why she could not have hired a lawyer to prepare the proper notice before the expiration of the 180-day filing period, or could not have prepared and filed the notice herself.[6] Some explanation or evidentiary support for why she reasonably could not file the notice of claim within the 180-day time limit was required.

---

[6] The requirements for filing proper notice are explicitly stated in section 8107. Proper notice requires:

> **A.** The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;
>
> **B.** A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
>
> **C.** The name and address of any governmental employee involved, if known;
>
> **D.** A concise statement of the nature and extent of the injury claimed to have been suffered; and
>
> **E.** A statement of the amount of monetary damages claimed.

14 M.R.S. § 8107(1)(A)-(E).

12

[¶22] At the time "good cause" no longer existed, there were sixty-three days remaining to file proper notice. Diviney failed to submit sufficient evidentiary support as to "why notice could not have been reasonably filed" within the 180-day filing period, or more specifically, during those remaining sixty-three days. Because the record contained no disputed material factual issues, and the court properly applied the language of section 8107 to the facts available in the record, the trial court did not err in granting summary judgment for UMS.

The entry is:

Judgment affirmed.

---

William C. Herbert, Esq. (orally), Hardy, Wolf & Downing, P.A., Lewiston, for appellant Aleshia D. Diviney

Christopher C. Dinan, Esq. (orally), Monaghan Leahy, LLP, Portland, for appellee University of Maine System

Kennebec County Superior Court docket number CV-2015-161
For Clerk Reference Only