STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-118

KENNETH D. JEAN,

Plaintiff

v.

ST. MARY'S REGIONAL MEDICAL
CENTER, ET AL.,

Defendant

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT

The matter before the court is defendants St. Mary's Regional Medical Center and St.

Mary's Health System's (collectively, "St. Mary's") motion for partial summary judgment. For

the following reasons, the motion is granted in part, and denied in part.

Background

On or about November 13, 2019, plaintiff Kenneth Jean received hyaluronic acid

injections for chronic knee osteoarthritis at St. Mary's Center for Orthopaedics. (Supp.'g S.M.F.

¶ 24.) Then, on the morning of November 16, 2019, Mr. Jean suffered two falls after his legs

gave out. (Pl.'s Add. S.M.F. ¶¶ 1-2.) Mr. Jean was unable to stand after his second fall. (Pl.'s

Add. S.M.F. ¶ 2.) Mr. Jean called 911 and requested to be transported to St. Mary's. (Supp.'g

S.M.F. ¶¶ 25-26.) Mr. Jean stated that he asked to be transported to St. Mary's because he was

familiar with their reputation and had always gone to St. Mary's for all of his medical treatment.

(Pl.'s Add. S.M.F. ¶¶ 3-10.)

Mr. Jean was diagnosed with a septic knee at the emergency room and was admitted to

the hospital for an open irrigation and debridement procedure. (Supp.'g S.M.F. ¶ 27.) Mr. Jean

was admitted by defendant Dr. Farouk Talakshi, a hospitalist working at St. Mary's. (Supp.'g

1

S.M.F. ¶ 28.) Once admitted, Mr. Jean was assigned to defendant Dr. Matthew Mechtenberg, another "hospitalist"[1] who assumed responsibility for Mr. Jean's care. (Supp.'g S.M.F. ¶ 31.) Mr. Jean alleges that his care from Drs. Talakshi and Mechtenberg was negligent and caused, at least in part, a significant delay in discovering a large epidural abscess in his thoracic spine, which resulted in permanent damage to his spinal cord, paraplegia, neurogenic bowel and bladder, and sexual dysfunction. (Supp.'g S.M.F. ¶ 41; Pl.'s Add. S.M.F. ¶ 23.)

Drs. Mechtenberg and Talakshi are directly employed by Sound Physicians. (Supp.'g S.M.F. ¶ 14.) Sound Physicians is an independent company that provides physician services to hospitals. (Supp.'g S.M.F. ¶ 3.) Sound Physicians entered into an agreement with St. Mary's on December 20, 2011, to provide hospitalist services. (Supp.'g S.M.F. ¶ 1.) Sound Physicians continued to provide hospitalist services, including the services of Drs. Mechtenberg and Talakshi, until December 31, 2021. (Supp.'g S.M.F. ¶ 4.)

Pursuant to the agreement between St. Mary's and Sound Physicians, Sound Physicians was responsible for recruiting and employing hospitalist physicians, maintaining professional liability insurance, and billing and collections services for services rendered by its physicians. (Supp.'g S.M.F. ¶¶ 5-6, 8-9, 30, 32-33.) Sound Physicians presented its physicians to St. Mary's for credentialing. (Supp.'g S.M.F. ¶ 7.) Sound Physicians would bill patients directly for services provided by its hospitalists. (Supp.'g S.M.F. ¶ 9.) St. Mary's also paid Sound Physicians a monthly fee and additional amounts based on a formula to cover any additional expenses incurred. (Supp.'g S.M.F. ¶ 10.)

---

[1] In earlier times, doctors saw their own patients when they had them hospitalized. (Pl.'s Add. S.M.F. ¶ 60.) Patients admitted to St. Mary's today are assigned to a hospitalist, based on who is on duty at the time of their admittance. (Pl.'s Add. S.M.F. ¶ 14.) Hospitalists assume responsibility for the patient's care while they are admitted to the hospital and follow their care while they are admitted. (Pl.'s Add. S.M.F. ¶ 59.)

The agreement between St. Mary's and Sound Physicians states that the hospitalists were independent contractors and that St. Mary's would not exercise control over the professional medical judgment of Sound Physicians hospitalists. (Supp.'g S.M.F. ¶ 11.) Hospitalists recruited by St. Mary's also had the option of wearing lab coats that said "Sound Physicians" on them. (Supp.'g S.M.F. ¶ 19.) There is no evidence in the record that shows whether Drs. Talakshi or Mechtenberg were actually wearing a Sound Physicians lab coat while treating Mr. Jean.

St. Mary's provided Drs. Mechtenberg and Talakshi with office space, sleep space, office supplies and equipment, including workstations with internet and network access, speakers, a fax machine, and phones. (Pl.'s Add. S.M.F. ¶ 56.) St. Mary's also provided much of the medical equipment used by Drs. Mechtenberg and Talakshi. (Pl.'s Add. S.M.F. ¶ 53.) All Sound Physicians medical providers were subject to the requirements in the bylaws, rules and regulations, policies and/or procedures of the Medical Staff and Hospital's governing board. (Pl.'s Add. S.M.F. ¶ 53.) In addition, because St. Mary's was a catholic hospital, Sound Physicians medical providers working at St. Mary's were required to comply with the *Ethical and Religious Directives of Catholic Care Services*. (Opp. S.M.F. ¶ 13.)

Prior to the irrigation and debridement surgery on Mr. Jean's knee, he signed a "Consent for Surgical and Medical Procedures." (Supp.'g S.M.F. ¶ 34.) This consent form contains the following acknowledgement: "I understand physicians on the Hospital Medical Staff who are not employees of the Hospital are not agents of the Hospital, but independent contractors who have been granted the privilege to use certain of its facilities for the care and treatment of their patients." (*Id.*) The consent form does not identify Sound Physicians, nor is there any evidence that Drs. Mechtenberg or Talakshi expressly identified themselves as being employees of Sound Physicians.

3

Mr. Jean contends that Sound Physicians were intentionally not identified as being separate from St. Mary's employees so that patients would understand that they were being treated by one integrated system of medical providers. (Pl.'s Add. S.M.F. ¶¶ 50, 52.) Mr. Jean did not ask any of his medical providers who they worked for and stated during his deposition that he did not think about it one way or another. (Supp.'g S.M.F. ¶¶ 36-38.) Mr. Jean clarified this statement by saying that "I just think that they would be employed by St. Mary's."[2] (Jean Dep. 38:14-15.) St. Mary's required all physicians, including Drs. Mechtenberg and Talakshi, to wear St. Mary's ID badges which included the name and photograph of the provider, the words "St. Mary's," and the St. Mary's logo. (Pl.'s Add. S.M.F. ¶¶ 32-34.) Mr. Jean could not recall whether Drs. Mechtenberg or Talakshi were wearing their St. Mary's badges when they provided treatment. (Supp.'g S.M.F. ¶ 39.)

Plaintiff filed a claim for medical malpractice based, in part, on the care that he received from Drs. Mechtenberg and Talakshi over the course of November 16 to 18, 2019. The St. Mary's defendants have brought this motion for partial summary judgment on the basis that Drs. Mechtenberg and Talakshi cannot be classified as employees or agents of St. Mary's, and therefore St. Mary's cannot be held vicariously liable for their actions.

Standard

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue

---

[2] St. Mary's argues that it is clear through context that this statement only refers to Mr. Jean's understanding of Drs. Mechtenberg and Talakshi's employment status at the time of the deposition, not at the time of his treatment. The court disagrees. A reasonable juror could read these comments and conclude that Mr. Jean was trying to clarify that the reason he did not think about whether the medical providers he encountered at the hospital were employees of St. Mary's is that he assumed that they were.

4

when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). In order to controvert an opposing party's factual statement, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). Assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial." *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59, ¶ 9, 19 A.3d 815.

Discussion

St. Mary's seeks summary judgment on three issues related to Mr. Jean's claim of vicarious liability for the acts of Drs. Mechtenberg and Talakshi. First, St. Mary's argues that Drs. Mechtenberg and Talakshi were independent contractors, not employees. Second, St. Mary's argues that Drs. Mechtenberg and Talakshi were not acting as agents with either express or implied authority when they provided care for Mr. Jean on November 16 to 18, 2019. Third, St. Mary's argues that Drs. Mechtenberg and Talakshi were not acting with apparent authority when they treated Mr. Jean. All three of these arguments will be addressed in turn.

Employee or Independent Contractor

Generally, an employer may be vicariously liable for the negligence of its employees, but not for the negligence of independent contractors. *Legassie v. Bangor Pub. Co.*, 1999 ME 180, ¶ 5, 741 A.2d 442. An employee's status is a mixed question of law and fact. *Penn v. FMC Corp.*, 2006 ME 87, ¶ 6, 901 A.2d 814. The Law Court synthesized the 8 commonly accepted factors

5

for determining whether a person is an employee or an independent contractor in *Murray's Case*, 130 Me. 181, 186, 154 A. 352, 354 (1931):

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;
>
> (2) independent nature of the business or his distinct calling;
>
> (3) his employment of assistants with the right to supervise their activities;
>
> (4) his obligation to furnish necessary tools, supplies, and materials;
>
> (5) his right to control the progress of the work except as to final results;
>
> (6) the time for which the workman is employed;
>
> (7) the method of payment, whether by time or by job;
>
> (8) whether the work is part of the regular business of the employer.

*Murray's Case* concerned a worker's eligibility for workers' compensation benefits, a context where the Law Court has held "factors such as the nature of the work and its relation to the employer's business have special importance." *Legassie*, 1999 ME 180, ¶ 8 n.4, 741 A.2d 442. In the context of tort liability, the right to control is highly emphasized. *Id.* Regardless of context, control remains the most important factor. *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me. 1982).

The right to control includes "the rights both to employ and to discharge subordinates and the power to control and direct the details of the work." *Legassie*, 1999 ME 180, ¶ 6, 741 A.2d 442. "The right to control the details of the performance, present in the context of an employment relationship, must be distinguished from the right to control the result to be obtained, usually found in independent contractor relationships." *Id.* (quotation marks omitted).

Analyzing the 8 *Murray's Case* factors as they relate to this case, it is clear that Drs. Mechtenberg and Talakshi were not employees of St. Mary's. First, Sound Physicians and St.

6

Mary's have entered into a detailed contract whereby St. Mary's provides the facilities and equipment for Sound Physicians hospitalists to provide medical care and holds Sound Physicians employees to the same rules and standards of conduct that its employees are held to, but Sound Physicians provides hospitalists who make independent medical decisions and bills clients directly.

Second, there is no question for the court that a physician is a professional who exercises a high degree of independent judgment in their work. *See Gafner v. Down E. Community Hosp.*, 1999 ME 130, ¶¶ 43-44, 735 A.2d 969.

Third, the contract between Sound Physicians and St. Mary's does not provide for Sound Physicians hospitalists to employ their own assistants. Additional support staff is provided by St. Mary's.

Fourth, St. Mary's is obligated under their contract with Sound Physicians to provide most of the necessary medical equipment for Sound Physicians's hospitalists to provide the contracted-for care.

Fifth, there is no evidence in the record that supports a finding that St. Mary's had the right to interfere with Sound Physicians' hospitalists' medical judgment. The contract between Sound Physicians and St. Mary's states that St. Mary's would not exercise control over the professional medical judgment of Sound Physicians hospitalists. Holding Sound Physicians's hospitalists to the same rules and standards as St. Mary's employees only shows that St. Mary's exercised control over the results of the work, not the progress. Mr. Jean notes that Sound Physicians hospitalists are required to comply with the Ethical and Religious Directives for Catholic Care Services, which forbids physicians to "permit or provide medical procedures that are judged morally wrong by the teaching authority of the church." (Opp. S.M.F. ¶ 13.) While a

7

physician in their own independent practice might chose treatment options which conflict with this policy, this again only speaks to St. Mary's' control over the results of the work, not the progress. St. Mary's was contracting for hospitalist care that complied with its medical standards and the moral teachings of the Catholic Church, but there is no evidence that St. Mary's exercised control over Sound Physicians hospitalists' treatment decisions on a day-to-day basis. Similarly, credentialing the hospitalists is not control of the work.

Sixth, Mr. Jean has not produced evidence of the time that Sound Physicians hospitalists were employed that would support a finding in favor of employee status. Mr. Jean argues that St. Mary's and Sound Physicians jointly established work hours through the contract, which requires 24-hour hospitalist coverage at certain patient to physician ratios, with at least two hospitalists on the day shift and one on the night shift. (Pl.'s Add. S.M.F. ¶ 58.) This only establishes that the parties contracted for a certain quantity of hospitalist services, not that St. Mary's secured hospitalists for the same amount of time as it employed other employees.

Seventh, while the contract provided for a base monthly fee, Sound Physicians billed patients directly for services provided. Payment was based on the services provided to patients and the salaries of the hospitalists, in addition to other administrative costs. There is no evidence that St. Mary's ever paid a Sound Physicians hospitalist directly.

Eighth, there is no evidence in the record that supports a finding either way on this factor. There is no evidence that hospitals, or St. Mary's in particular, typically employ hospitalists directly, or employ them as independent contractors.

Considering all of the factors together, and emphasizing the right of control, the court finds that there are no genuine issues of material fact related to Drs. Mechtenberg and Talakshi's employee status. It is clear on this record that St. Mary's did not exercise the necessary control

8

over Sound Physicians hospitalists for them to be considered employees. The court's analysis is buttressed by two recent Superior Court cases decided by Justice McKeon, which found medical professionals working at hospitals in similar contexts were independent contractors, not employees. *See, e.g., Arsenault v. Mid Coast Hospital, et al.*, No. CV-20-47, 2022 Me. Super. LEXIS 99, at *9-12 (Feb. 22, 2022).

St. Mary's is entitled to summary judgment on this issue.

Agency

Even though an employer may not normally be held liable for the negligence of an independent contractor, this is not always the case. An entity may be held liable for the negligence of an independent contractor if there is an established agency relationship between the two. *Bonk v. McPherson*, 605 A.2d 74, 78 (Me. 1992). An agency relationship is a fiduciary relationship "which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Desfosses v. Notis*, 333 A.2d 83, 86 (Me. 1975). An agency relationship, and the corresponding authority for the agent to act on behalf of the principal, may be either actual or apparent. *Libby v. Concord General Mut. Ins. Co.*, 452 A.2d 979, 981 (Me. 1982). Whether an agency relationship exists is generally a question of fact. *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 12, 983 A.2d 382.

Actual or Implied Authority

"The elements of an agency relationship are (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions." *State Farm Mut. Auto Ins. Co. v. Koshy*, 2010 ME 44, ¶ 16 996 A.2d 651(citing *Dent v. Exeter Hosp. Inc.*, 931 A.2d 1203, 1209 (N.H. 2007)) (quotation marks omitted). Actual authority and implied authority both depend on a

9

manifestation of consent by the principal, and, crucially, "go[] to the perceptions of the *agent* not the third party." *Libby*, 452 A.2d at 982.

There is no evidence in the record on this summary judgment motion that Drs. Mechtenberg or Talakshi, or Sound Physicians for that matter, had authorization from St. Mary's to act on its behalf. The contract expressly states that Sound Physicians hospitalists would be independent contractors and that St. Mary's would not interfere with their medical judgment. As discussed above, there is no evidence that St. Mary's exercised control over Drs. Mechtenberg and Talakshi's clinical judgments. Further, both doctors stated unambiguously that they understood themselves to be independent contractors.

Even viewing the evidence in the light most favorable to Mr. Jean, as the court must on a motion for summary judgment, there is no genuine issue of material fact as to whether Drs. Mechtenberg and Talakshi were agents acting with actual or implied authority while they provided care for Mr. Jean. St. Mary's is entitled to summary judgment on this issue.

Apparent Authority

Last, the court will address St. Mary's claim that Drs. Mechtenberg and Talakshi were not acting with apparent authority on behalf of St. Mary's when they provided care for Mr. Jean.

Even when the parties do not understand themselves to be in an agency relationship, an entity may sometimes be held to have the apparent authority to act on behalf of a principal if the "conduct of the principal leads a third person to believe that a given party is his agent." *Libby*, 452 A.2d at 982. "Apparent authority is authority that, although not actually granted, the principal knowingly permits the agent to exercise or that the principal holds the agent out as possessing." *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 22, 116 A.3d 466. Unlike actual or

10

implied authority, apparent authority deals chiefly with the perceptions of the third party, not the agent or principal. *See Libby*, 452 A.2d at 982-83.

The Law Court uses a four-part test for determining whether an entity has apparent authority, based on the Restatement (Second) of Agency § 267.[3] To prove a claim of apparent agency, a plaintiff must prove the following elements:

(1) the defendant either intentionally or negligently held a person out as [its] agent for services,

(2) the plaintiff did in fact believe the person to be an agent of the defendant,

(3) the plaintiff relied on the defendant's manifestation of agency, and

(4) the plaintiff's reliance was justifiable.

*Remmes*, 2015 ME 63, ¶ 22, 116 A.3d 466. On this issue, the court finds that there remain issues of material fact as to whether St. Mary's held out Drs. Mechtenberg and Talakshi as its agents for hospitalist services.

On the first element, St. Mary's argues that the consent form Mr. Jean signed and a press release advertising its contract with Sound Physicians make it clear that St. Mary's never held out Drs. Mechtenberg or Talakshi as its agents.[4] The press release does not identify Drs. Mechtenberg or Talakshi specifically, and there is nothing in the press release cited by St. Mary's that would lead a reasonable person to conclude that *all* hospitalists at St. Mary's would

---

[3] Plaintiff asks the court to adopt the apparent authority analysis articulated in the Restatement (Third) of Agency § 2.03. The Restatement (Third) offers a more streamlined analysis than the four-element test articulated in the Restatement (Second). In the Restatement (Third), apparent authority exists "when a third-party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." § 2.03. The Law Court has not adopted the Restatement (Third)'s definition of apparent authority to date. The court need not reach the issue of whether the Restatement (Third) should be adopted because Mr. Jean prevails even under the more strict test based on the Restatement (Second).

[4] St. Mary's also argues that even though there is no evidence that Drs. Mechtenberg and Talakshi were wearing a Sound Physicians lab coat when they interacted with Mr. Jean or had ever worn a Sound Physicians lab coat while working at St. Mary's, they would "occasionally" wear the Sound Physicians lab coat and concludes, baselessly, that "it is more likely that they were wearing a Sound [Physicians] lab coat." This is plainly a disputed question of fact, and not an appropriate basis for summary judgment.

11

be employed by Sound Physicians. Further, even if the press release had said so, there is no evidence that Mr. Jean saw this press release. What the record does show is that Drs. Mechtenberg and Talakshi had St. Mary's badges and were not required to wear Sound Physicians lab coats. Mr. Jean signed a consent form which would have put him on notice that non-employee hospital staff were not agents of the hospital, but there is no evidence that Drs. Mechtenberg or Talakshi ever identified themselves as non-employees. There remains a genuine issue of material fact as to whether St. Mary's held out Drs. Mechtenberg and Talakshi as its agents.

As for the second element, St. Mary's argues that Mr. Jean's statements during his deposition prove that Mr. Jean did not believe that Drs. Mechtenberg and Talakshi were agents of St. Mary's. Mr. Jean testified at his deposition that he did not think about their employment status one way or another and clarified by saying "I just think that they would be employed by St. Mary's." (Jean Dep. 38:14-15.) A jury could reasonably understand this testimony to mean that he did not give the issue any thought because he assumed that all of his providers worked for St. Mary's, and nothing he encountered during his stay gave him cause to question this assumption. There remains a genuine issue of material fact as to whether Mr. Jean believed Drs. Mechtenberg and Talakshi to be agents of St. Mary's.

For the third element, St. Mary's relies on the same piece of deposition testimony to argue that Mr. Jean did not rely on the representation of authority because he did not think about it. Once again, this argument fails. There is ample evidence in the record to conclude that Mr. Jean had a long-standing relationship with St. Mary's. He had been going there for medical treatment his entire life. It is reasonable to conclude that Mr. Jean relied upon what he considered to be a high standard of care from St. Mary's employees when he sought care there. There

12

remains an issue of material fact as to whether Mr. Jean relied on St. Mary's manifestation of agency.

For the fourth and final element, there remains an issue of material fact as to whether Mr. Jean was justified in his reliance on St. Mary's representation of agency. Put bluntly, interpreting the facts in the record for this summary judgment motion in the light most favorable to Mr. Jean, a person admitted to the hospital would have no reason to suspect that Drs. Mechtenberg and Talakshi were not agents of the hospital. A consent form that explains that non-employee medical staff are independent contractors does little to put a patient on notice that a specific medical professional they are interacting with is an independent contractor if that professional does not identify themselves as a non-employee. There is no evidence in the record that Drs. Mechtenberg or Talakshi did so, or that Mr. Jean would have had any other way of knowing that they were not employed by St. Mary's.

There remain genuine issues of material fact as to all four elements of apparent agency under *Remmes*. For that reason, St. Mary's is not entitled to summary judgment on this issue.

The entry is

> Defendants St. Mary's Regional Medical Center and St. Mary's Health System's Motion for Summary Judgment is GRANTED as to the employee status of defendant Dr. Matthew Mechtenberg and defendant Dr. Farouk Talakshi, GRANTED as to Dr. Mechtenberg and Dr. Talakshi's status as agents with actual or implied authority to provide medical care, and DENIED as to their status as acting with apparent authority.

> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: February 3, 2023

Harold Stewart, II
Justice, Superior Court

13