2012 ME 6

**Carrie B. ANDERSON et al.**

v.

**Constance BANKS et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2011.
Decided: Jan. 24, 2012.

Barry K. Mills, Esq. (orally), Hale & Hamlin, LLC, Ellsworth, for appellants Carrie B. Anderson, Deborah B. Collins, Liela B. Johnson, and Rebecca B. York.

William D. Robitzek, Esq. (orally), and Paul F. Macri, Esq., Berman & Simmons, P.A., Lewiston, for appellee William Banks, Jr.

Randolph A. Mailloux, Esq., Mailloux & Marden, P.A., Belfast, for appellee Constance Banks.

Peter R. Roy, Esq., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for appellee Mary L. Banks.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] This appeal primarily concerns whether a Settlement Agreement,[1] which contains an arbitration clause, gave the arbitrator the authority to determine whether the Agreement was valid and enforceable. We conclude that it did and affirm the judgment of the Superior Court.

[¶ 2] Carrie B. Anderson, Deborah Collins, Liela Johnson, and Rebecca York (collectively, the sisters) appeal, and Constance Banks, William Banks, Jr., and Mary Banks (collectively, the Bankses) cross-appeal, from a judgment of the Superior Court (Hancock County, *Cuddy, J.*)

---

1. This Agreement was the result of voluntary mediation between the parties.

confirming an arbitration award, denying a motion to vacate the award, denying a motion for judgment on the pleadings, and granting a motion to dismiss a complaint for declaratory judgment. The sisters argue that the arbitration is a nullity because they did not voluntarily participate in the arbitration and because the arbitrator did not have authority to determine the validity of the Agreement. The sisters further contend that (1) the arbitrator exceeded his powers; (2) the arbitrator exhibited "evident partiality"; (3) the Agreement violates the statute of frauds; and (4) the Agreement is illusory and void. The Bankses argue that the Superior Court did not commit an error of law in confirming the arbitration award, but on cross-appeal argue that the court erred in stating that the orders of the Probate Court implementing the arbitration agreement are a nullity.

## I. BACKGROUND

[¶ 3] This appeal involves six siblings and their mother. The parties challenging the arbitration award are sisters Carrie Anderson, Deborah Collins, Liela Johnson, and Rebecca York. The other two siblings, Constance Banks and William Banks, Jr., and Mary Banks, the mother of the six siblings, are defending the award in this appeal. A dispute arose among the siblings regarding the care of their mother, and the sisters petitioned for conservatorship of Mary Banks in Probate Court. While the petition was pending, the parties participated in mediation with the mutually agreed-upon mediator, Jerrol Crouter. The mediation resulted in the Agreement, signed by Constance Banks; William Banks; Peter Roy, Esq., on behalf of Mary Banks; Liela Johnson; Rebecca York; and Charles Budd, Esq., on behalf of Carrie Anderson and Deborah Collins. Mary Banks is the only party who did not attend the mediation.

[¶ 4] The Agreement contains nineteen paragraphs primarily addressing visitation with Mary Banks, dismissal of the pending petition for conservatorship of Mary Banks, division of personal property, division and deeding of real property, payments toward the grandchildren's education, dissolution of the family corporation, and release of and indemnification from any future claims. The most contested provision of the Agreement is the arbitration clause, which states:

> ARBITRATION. The parties agree that any dispute regarding the interpretation, enforcement, or implementation or execution of this agreement or the documents necessary to effectuate it will be decided by binding arbitration by Jerrol Crouter. He shall award attorney fees and costs for any such arbitration against the unsuccessful party.

[¶ 5] After disputes arose over the Agreement, the Hancock County Probate Court (*Patterson, J.*) ordered arbitration. The Probate Court specifically determined that the arbitration clause is severable from the rest of the Agreement, that the sisters were challenging the validity of the Agreement and not the arbitration clause itself, that arbitration should be ordered if the validity of the entire Agreement is in question, and that the sisters agreed to arbitrate disputes. As a result of the Probate Court's order, Crouter conducted the arbitration on March 30, 2010. After evaluating the sisters' claims, the arbitrator decided that he did have the authority to determine the validity of the Agreement. The arbitrator then concluded that the Agreement was enforceable and ordered the transfer of land necessary to effectuate it.

[¶ 6] The sisters and the Bankses then filed a series of pleadings and motions in Superior Court. First, the sisters filed a complaint for declaratory judgment pursu-

ant to 14 M.R.S. §§ 5951–5963 (2011) and M.R. Civ. P. 57, requesting that the Agreement be found invalid for violating the statute of frauds, for being illusory, and for a lack of a meeting of the minds. The request for declaratory judgment also asked that the Probate Court's order be found invalid for lack of subject matter jurisdiction. Along with the complaint, the sisters filed a motion to vacate the arbitration award pursuant to the Uniform Arbitration Act (UAA), contending that the award was procured by corruption, fraud, or undue means; that the arbitrator exhibited evident partiality; that the arbitrator exceeded his powers; and that there was no arbitration agreement. 14 M.R.S. §§ 5938(1)(A),[2] (B), (C), (E),[3] 5942 (2011).

[¶ 7] The sisters next filed a motion for judgment on the pleadings pursuant to M.R. Civ. P. 12(c). The Bankses then filed a motion to dismiss the complaint for declaratory judgment pursuant to M.R. Civ. P. 12(b)(6). Lastly, the sisters filed a motion for exemption from the alternative dispute resolution (ADR) requirements of M.R. Civ. P. 16B(a), pursuant to M.R. Civ. P. 16B(b)(9).

[¶ 8] The Superior Court, after hearing argument on the motions, first ordered a stay of the ADR requirements pending resolution of the remaining motions. The court next addressed the validity of the arbitration in general. The court concluded that, although the Superior Court has exclusive jurisdiction to order arbitration pursuant to 14 M.R.S. § 5943 (2010),[4] the sisters nevertheless voluntarily participated in the arbitration because they agreed to arbitrate disputes and they failed to seek relief or stay the proceedings pursuant to 14 M.R.S. § 5928 (2010).[5] The court also concluded that the Probate Court has jurisdiction over the validity of the Agreement as a whole, but "the implementation of the arbitration of that [A]greement is before the Superior Court."

[¶ 9] Next, the court addressed the standard of review governing challenges to the arbitration award and concluded that the scope of review is narrow. The court determined that even if the arbitrator

---

2. The sisters have waived their argument that the award was procured by corruption, fraud, or undue means pursuant to 14 M.R.S. § 5938(1)(A) (2011) on appeal. *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n. 6, 759 A.2d 205 ("The failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue.").

3. Section 5938(1) lists a total of six grounds for vacating an arbitration award:

   A. The award was procured by corruption, fraud or other undue means;
   B. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
   C. The arbitrators exceeded their powers;
   D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, con-

trary to the provisions of section 5931, as to prejudice substantially the rights of a party;
   E. There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or
   F. The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.
   14 M.R.S. § 5938(1) (2011).

4. Title 14 M.R.S. § 5943 has since been amended. P.L.2011, ch. 80, § 5 (effective Sept. 27, 2011) (codified at 14 M.R.S. § 5943 (2011)).

5. Title 14 M.R.S. § 5928 has since been amended. P.L.2011, ch. 80, § 4 (effective Sept. 27, 2011) (codified at 14 M.R.S. 5928 (2011)).

makes a mistake of law or fact, the court could not vacate an award if the arbitrator kept within the scope of his authority when deciding the outcome of the arbitration. The court listed the six grounds upon which an award may be vacated pursuant to section 5938, and concluded that none of the grounds existed in this case.

[¶ 10] Specifically, the court, noting the trend to "interpret agreements broadly and in favor of arbitration authority," first determined that the arbitrator did not exceed his powers pursuant to section 5938(1)(C). The court determined that the Agreement contains the authority to allow the arbitrator to arbitrate the defenses to the enforcement of the Agreement.

[¶ 11] Second, the court determined that the arbitrator's decision was not procured through undue means or bias pursuant to 14 M.R.S. § 5938(1)(A), (B). Here, the court determined that the Agreement was the product of an "arm[']s length" negotiation and did not reflect bias or undue means on the part of the mediator.[6] The court also determined that the arbitration proceedings, conducted by an arbitrator agreed to by all parties, did not show evidence of bias or undue means. Finally, the court concluded that, because the parties did not allege any facts in the record to support claims pursuant to 14 M.R.S. § 5938(1)(E) and (F), those provisions did not need to be addressed.

[¶ 12] Based on these findings and conclusions, the court granted the Bankses' motion to dismiss the complaint and denied the sisters' motions to vacate the arbitrator's award and for judgment on the pleadings. The sisters timely appealed and the Bankses timely cross-appealed pursuant to 14 M.R.S. § 5945(1)(C) (2011) and M.R.App. P. 2.

## II. DISCUSSION

[¶ 13] The pivotal issue on appeal is the sisters' substantive arbitrability challenge pursuant to section 5938(1)(E)—that the parties to the Agreement did not intend to submit disputes concerning the underlying validity of the Agreement to arbitration.[7] *See Westbrook Sch. Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 207 (Me.1979). There are two avenues available to a party who wants to challenge the substantive arbitrability of a particular dispute. First, a party can file an application to compel or stay arbitration pursuant to section 5928. *See J.M. Huber Corp. v. Main–Erbauer, Inc.*, 493 A.2d 1048, 1050 (Me.1985). Second, a party can file an application to vacate an arbitration award pursuant to section 5938(1)(E).[8] *See id.* Although the Bankses urge otherwise, we have never required a party to file an application to stay in order to preserve a substantive arbitrability objection. *See Westbrook Sch. Comm.*, 404 A.2d at 207; *cf. J.M. Huber Corp.*, 493 A.2d at 1050 (identifying the two separate avenues for lodging a substantive arbitrability challenge without acknowledging a requirement that an application to stay must precede an application to

---

6. The Superior Court addressed the question of the mediator's (Crouter's) partiality or bias because he also served as the arbitrator in the subsequent proceedings.

7. The sisters also argue that the arbitration is a nullity because the Probate Court lacked subject matter jurisdiction to order arbitration. Whether the Probate Court in fact had jurisdiction, or whether the sisters voluntarily participated in the arbitration pursuant to the

Agreement as the Superior Court found, is a moot issue because the sisters did in fact participate in the arbitration without filing an application to stay the arbitration pursuant to 14 M.R.S. § 5928 (2010).

8. An application to stay arbitration pursuant to section 5928 and an application to vacate an arbitration award pursuant to section 5938 are made by filing a motion, as provided in 14 M.R.S. § 5942 (2011).

vacate); *Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Ass'n*, 435 A.2d 1381, 1383 (Me.1981) (identifying the two separate avenues for lodging a substantive arbitrability challenge, with the only distinction between the two avenues being that the UAA provides for appeals from denials of applications to vacate but not from denials of applications to stay).

[¶ 14] The application to stay and the application to vacate are the exclusive avenues for challenging the substantive arbitrability of a dispute. *J.M. Huber Corp.*, 493 A.2d at 1050. Ultimately, the courts must decide the substantive arbitrability issue upon receipt of one of the two applications. *Westbrook Sch. Comm.*, 404 A.2d at 207 ("It is well settled that the final decision on the question of substantive arbitrability is the function of the court, not of the arbitrator."). We examine the actions, or inaction, of the Superior Court for errors of law. *Westbrook*, 404 A.2d at 206 n. 3.

[¶ 15] Because the sisters participated in the arbitration before lodging their substantive arbitrability challenge in Superior Court, it was the arbitrator who initially ruled on the issue. The arbitrator concluded that the Agreement was enforceable and proceeded to fashion remedies to the particular disputes within the Agreement. After arbitration, the sisters filed several motions in the Superior Court, including a motion to vacate pursuant to section 5938(1)(A) (the award was procured through corruption, fraud, or undue means), section 5938(1)(B) (the arbitrator exhibited "evident partiality"); section 5938(1)(C) (the arbitrator exceeded his powers), and section 5938(1)(E) (there was no arbitration agreement).

[¶ 16] The Superior Court did not address the sisters' substantive arbitrability challenge when considering section 5938(1)(E) because it viewed the issue as unpreserved. However, the record reveals that the sisters did in fact preserve their substantive arbitrability argument. In addition to specifically naming section 5938(1)(E) in their motion to vacate, the sisters, at several points in their oral argument on the motion, argued that they did not agree to arbitrate the validity of the Agreement, and that the court, not the arbitrator, must rule on their claims that the Agreement is illusory or is in violation of the statute of frauds. Also, as we have already established, the sisters did not waive their substantive arbitrability challenge when they failed to file a motion to stay the arbitration pursuant to section 5928.

[¶ 17] Despite concluding that the sisters did not preserve their substantive arbitrability challenge, the Superior Court did directly address the substantive arbitrability issue in its analysis of whether the arbitrator exceeded his powers pursuant to section 5938(1)(C). An analysis pursuant to section 5938(1)(C) examines "the way the arbitrator decided the merits of the dispute," as opposed to an analysis of section 5938(1)(E), which examines the arbitrability of the dispute as a whole. *Westbrook Sch. Comm.*, 404 A.2d at 207–08. These two subsections overlap in that, without an agreement to arbitrate a particular dispute, the arbitrator has no power to render an award. *Id.* at 206–07 n. 4.

[¶ 18] Specifically, in its section 5938(1)(C) analysis, the Superior Court concluded that "the express and implied direction given by the parties in the ... Agreement reflected express and implied authority to evaluate and arbitrate the [sisters'] defenses to the enforcement of the ... Agreement. This [c]ourt interprets the ... Agreement to contain that authority." This statement addresses the substantive arbitrability of the dispute— whether the arbitration agreement gave the arbitrator the authority to determine

the validity of the contract as a whole, and thus decide whether the Agreement is illusory or is in violation of the statute of frauds—more so than it addresses the way the arbitrator decided the particular dispute.

[¶ 19] The Superior Court's conclusion that the Agreement contained within it the authority to allow the arbitrator to decide the validity of the Agreement as a whole was not an error of law. Maine has a "broad presumption favoring substantive arbitrability," *Macomber v. Mac-Quinn–Tweedie*, 2003 ME 121, ¶ 13, 834 A.2d 131 (quotation marks omitted), and the language of this arbitration clause, that "*any* dispute regarding the interpretation, enforcement, or implementation or execution of this agreement or the documents necessary to effectuate it will be decided by binding arbitration," warrants the application of this presumption.[9]

[¶ 20] With respect to the sisters' remaining challenges, the Superior Court did not err in its review of the arbitration decision when it concluded that the arbitrator was not partial and that the arbitrator did not exceed his powers. With respect to the sisters' claims that the Agreement is illusory or is in violation of the statute of frauds, those issues are not subject to review by the Superior Court pursuant to section 5938.

[¶ 21] In conclusion, the Superior Court did not err in affirming the arbitrator's award and in concluding that the arbitrator had the authority to hear and decide the challenges to the validity of the Agreement as a whole.

The entry is:

Judgment affirmed.

---

9. The sisters argue that the presumption in favor of arbitration is outweighed by the principle that ambiguities in a contract are to be interpreted against the drafter. *See Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶ 15, 870 A.2d 146. Assuming, arguendo, that the Bankses are the "drafters" of the arbitration clause, this is not the usual case where the parties to the contract are in unequal bargaining positions and equitable considerations support a finding in favor of the weaker party. *See id.* ¶¶ 16, 18, 22. Here, attorneys represented all parties at the mediation, and all parties had the opportunity to make changes to the Agreement before they signed it.