STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, ss                                  CIVIL ACTION
                                                DOCKET NO. CV-16-06

CARRIE ANDERSON, et al.,

                    Plaintiffs

v.                                              ORDER

BARRY K. MILLS, ESQ., et al.,

                    Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

APR 10 2018
3:36 PM
RECEIVED

In this lawsuit plaintiffs Carrie Anderson and Deborah Collins are suing defendants Barry Mills and Hale & Hamlin LLC (collectively referred to as Mills) for professional negligence. Before the court is defendants' motion for summary judgment.

Prior Proceedings

The procedural history that led to this case arises from a set of convoluted proceedings that began in the Hancock County Probate Court and that led to a disputed settlement agreement followed by further proceedings in the Probate Court, the Superior Court, and the Law Court in which plaintiffs challenged the settlement agreement.

The docket sheet of the Hancock Probate proceeding, *Matter of Mary Banks,* Hancock Probate No. 2005-264, is attached as Exhibit C to defendants' Statement of Material Facts dated September 21, 2017 (subsequently cited as "Defendants' SMF") and reflects that a petition for a conservatorship was originally filed on her own behalf by plaintiffs' mother, Mary Banks, in July

2005.[1] When Mary Banks subsequently withdrew her petition, plaintiffs Anderson and Collins along with two of their sisters, Liela Johnson and Rebecca York, filed their own petition for a conservatorship of their mother. Defendants' SMF ¶ 3 (admitted). In the Hancock conservatorship proceeding the four sisters were represented by Attorney Charles Budd from the Rudman Winchell law firm.

The four sisters' petition for conservatorship was opposed by their mother, by their brother, William Banks, and by another sister, Constance Banks. The various submissions of the parties demonstrate that in addition to the issues raised by the petition for conservatorship, the proceedings eventually involved disputes between the four sisters and their brother with respect to the disposition of family property.

The case was the subject of mediation with Attorney Jerrol Crouter on September 18, 2009. The events at the mediation are the subject of considerable dispute. However, it is undisputed that Anderson and Collins left while the mediation was still underway, that Attorney Budd thereafter signed a settlement agreement on their behalf, and that his authority to have signed that agreement is one of the major issues in controversy.

Once it became clear that the settlement agreement was going to be challenged, Attorney Budd withdrew from representing the four sisters. Attorney Barry Mills (the defendant in this case) thereafter appeared on their behalf.

---

[1] In response to Defendants' SMF, plaintiffs filed a Rule 56(h)(2) statement responding to the numbered paragraphs in Defendants' SMF and also setting forth additional facts which plaintiffs contended raised factual disputes for trial. This will be cited as "Plaintiffs' SAMF".

The settlement agreement contained a provision that "any dispute regarding the interpretation, enforcement, or implementation or execution of this agreement . . . will be decided by binding arbitration by Jerrol Crouter."[2]

On December 22, 2009 there was a hearing before Probate Judge Patterson on a motion by William Banks (joined by his mother and Constance Banks) to require arbitration before Crouter. The transcript of that hearing is annexed as Exhibit A to Defendants' SMF. Attorney Mills, on behalf of the four sisters, opposed that motion, arguing among other things that Budd had not been authorized to enter the settlement agreement by Anderson and Collins.[3]

Probate Judge Patterson, in a decision filed January 12, 2010 (Exhibit D to Defendants' SMF) found that before they left the mediation, Anderson and Collins had informed Crouter that Budd was authorized to sign an agreement for them and had not informed Crouter that there were any limitations on Budd's authority. Judge Patterson therefore found that Anderson and Collins were parties to the settlement agreement. January 12, 2010 Probate Court Decision at 2-3.

Judge Patterson also found that the agreement to arbitrate was severable from the remainder of the settlement agreement and that all four sisters had agreed to the arbitration provision. *Id.* at 4-5. Accordingly, he ordered the parties to proceed to arbitration before Crouter to resolve the remaining issues involved in the pending disputes with respect to the sisters' access to Mary Banks and with respect to certain property. These issues included whether the settlement agreement was illusory and whether it had been repudiated by William and Constance Banks.

---

[2] This provision is quoted in the Law Court's subsequent decision in *Anderson v. Banks,* 2012 ME 6 ¶ 4, 37 A.3d 915.

[3] *See* Opposition Memorandum filed by Attorney Mills dated December 9 2009 in the Probate Proceeding, p. 1 (cited in and attached as Exhibit U to Plaintiffs' SAMF ¶ 133), which includes a section titled, "A Settlement Agreement Signed by an Attorney without Actual Authority Is Not Binding on the Clients."

3

Attorney Mills recommended that his clients appeal from the decision of the Probate Court, and the probate docket sheet reflects that such an appeal was filed. Plaintiffs' SAMF ¶ 137; Probate Docket sheet entry for March 5, 2010. According to the Probate Court docket sheet, an order dismissing the appeal (presumably as interlocutory) was filed on March 31, 2010.

Arbitration before Crouter was held on March 30, 2010. Defendants' SMF ¶ 29 (admitted). An arbitration decision was rendered on April 5, 2010 (Exhibit E to Defendants' SMF). The arbitration decision was adverse to the four sisters. Defendants' SMF ¶ 31. The issue of whether Budd had been authorized to enter the settlement agreement was not addressed in the arbitration decision and, having been addressed in the January 12, 2010 Probate Court decision, was not raised before the arbitrator.

On May 25, 2010 Anderson and Collins, joined by their sisters Johnson and York and represented by Attorney Mills, commenced an action in the Hancock County Superior Court seeking declaratory relief that the September 18, 2009 settlement agreement resulting from the mediation was invalid. The docket record in the Superior Court proceeding, ELLSC-CV-2010-19, is annexed as Exhibit F to Defendants' SMF. The four sisters' motion to vacate the arbitration award was denied by Superior Court Justice Kevin Cuddy in a decision filed February 2, 2011 and annexed as Exhibit G to Defendants' SMF.

The summary judgment record indicates that the issue of Budd's authority to sign the settlement agreement on behalf of Anderson and Collins was not raised by Attorney Mills in the Superior Court, and that issue was not addressed in the Superior Court's decision. Justice Cuddy did address what he characterized as the four sisters' claim that they had been compelled to arbitrate by the Probate Court and should not be bound by an arbitration award that they alleged was a nullity. Justice Cuddy ruled that jurisdiction over motions to stay arbitration lies with the

4

Superior Court, not the Probate Court and that, having not sought such relief, the four sisters had voluntarily submitted to arbitration. He also stated, "The evidence persuades the Court that by executing their Settlement Agreement, Plaintiffs had already voluntarily agreed to arbitrate before Mr. Crouter." February 2, 2011 Superior Court decision at 3.

Justice Cuddy ruled that Crouter as arbitrator had the authority to determine of the settlement agreement was enforceable and had not exceeded his authority under 14 M.R.S. § 5938(1)(C). *Id.* at 5-7. In a footnote, he concluded that the four sisters' arguments that the settlement agreement violated the statute of frauds, was illusory, and was the produce of mutual mistake had been decided adversely to them by the arbitrator and were *res judicata. Id.* at 6 n.4. Finally, Justice Cuddy ruled that the settlement agreement had not been procured by undue means under 14 M.R.S. § 5938(1)(A) and that the arbitration award had not been the product of bias on the part of the arbitrator under 14 M.R.S. § 5938(1)(B). *Id.* at 8.

Justice Cuddy therefore denied the four sisters' motion to vacate the arbitration award and granted William Banks's motion to dismiss. On February 25, 2011, Justice Cuddy modified his order to add a sentence that the arbitration award was confirmed. Defendants' SMF ¶ 36 (admitted).

The four sisters, represented by Attorney Mills, then appealed to the Law Court, which affirmed Justice Cuddy's decision on January 24, 2012. *Anderson v. Banks,* 2012 ME 6. The Law Court stated that the "pivotal issue" was the sisters' contention that the parties to the settlement agreement did not intend to submit disputes concerning the validity of the agreement to arbitration. 2012 ME 6 ¶ 13. Disagreeing with the Superior Court that the sisters had not preserved their argument that they had not agreed to arbitrate the validity of the settlement agreement, the Law Court nevertheless found that the Superior Court's decision had addressed the validity of the

5

agreement to arbitrate and that its "conclusion that the [Settlement Agreement] contained within it the authority to allow the arbitrator to decide the validity of the Agreement as a whole was not an error of law." 2012 ME 6 ¶¶ 16-19. This statement was specifically made with respect to the sisters' arguments that the settlement agreement was illusory and violated the statute of frauds. *See* 2012 ME 6 ¶¶ 16, 18.

The Law Court also rejected the four sisters' other challenges to the Superior Court decision. 2012 ME 6 ¶ 20. The Court did not address Budd's authority to execute the settlement agreement on behalf of Anderson and Collins and whether, if Budd had lacked authority, Anderson and Collins were not bound because they had never agreed to arbitrate. No argument with respect to Budd's authority was ever raised by Mills in the Law Court. Plaintiffs' SAMF ¶ 140.[4]

Anderson, Collins, Johnson, and York subsequently commenced an action against Attorney Budd, Rudman Winchell, and several other Rudman Winchell lawyers for professional negligence. *See* Plaintiffs' SAMF ¶ 88 n.1. In their Rule 56(h)(2) statement, Anderson and Collins have relied on depositions taken in that action, *Anderson v. Budd*, CV-13-183 (Cumberland Superior Court). See Exhibits C-H, K, and L to Plaintiffs' SAMF.[5]

Anderson and Collins then commenced this action against Mills and Hale & Hamlin.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary

---

[4] Defendants' Reply SMF raises an unconvincing objection to paragraph 140 and offers a qualification to the effect that any failure to raise the issue of authority is trumped by other evidence in the case, but Defendants do not deny that Budd's alleged lack of authority was not raised.

[5] Although the summary judgment record does not reveal the outcome of that action, the court understands that it was settled.

6

judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

Discussion

To prevail on their legal malpractice claim, plaintiffs have to prove (1) that Mills failed to meet the requisite standard of professional competence and (2) that if Mills had not been negligent, they would have received a more favorable result by setting aside the September 18, 2009 settlement agreement. *See Corey v. Norman Hanson & DeTroy*, 1999 ME 196 ¶¶ 10, 13, 742 A.2d 933.[6]

Based on the testimony of their expert witness, Attorney John Lambert, Anderson and Collins contend that Mills committed professional negligence in two respects. The first was by not seeking to stay arbitration in the Superior Court rather than by opposing William Banks's motion to compel arbitration in the Probate Court. Plaintiffs' SAMF ¶¶ 143, 153, 159-60. The second was by not pursuing the argument that Budd had acted without authority in signing the settlement

---

[6] To ultimately recover damages in this case, Anderson and Collins would not only have to show that they would have been likely to succeed in setting aside the settlement agreement but that they would likely have prevailed if they had thereafter been allowed to pursue their claims in the Probate Court and their claims against William Banks.

7

agreement on behalf of Anderson and Collins at the conclusion of the mediation.[7] Plaintiffs' SAMF ¶¶ 144, 147, 149, 158.

Defendants argue that plaintiffs' claim that Mills should have litigated the actual authority issue in the Superior Court is foreclosed because the Law Court in *Anderson v. Banks* already ruled that the arbitrator had the authority to decide the validity and enforceability of the Settlement Agreement. In this connection, they have also offered an affidavit from Crouter that if the issue had been presented to him, he would have found that Budd was authorized to sign the settlement agreement. The problem with this argument is that the Law Court ruled that the arbitrator had the authority to determine the validity of the settlement agreement with respect to two specific claims – that the agreement violated the statute of frauds and that the agreement was illusory. 2012 ME 6 ¶¶ 16, 18. At the same time, the Law Court reiterated the principle that the decision of whether a dispute is subject to arbitration in the first place is the function of the court, not of the arbitrator. 2012 ME 6 ¶ 14.

As a result, if the argument had been raised that Anderson and Collins had never agreed to arbitrate because they were not bound by the settlement agreement, that issue could have been raised in the Superior Court. *See* 14 M.R.S. §§ 5928(1), 5938(1)(E). It therefore does not matter how Crouter would have ruled on this issue. In any event, the court would not give any weight to Crouter's affidavit predicting how he would have ruled on issues that were not presented to him.

Nevertheless, the court does not find, based on the undisputed record, that the claim that Mills should have initially contested arbitration in the Superior Court presents a disputed issue for trial. It is evident that the Superior Court at least had concurrent jurisdiction to consider

---

[7] As noted above, that argument was raised by Attorney Mills at the December 2009 probate hearing but was not pursued thereafter with the arbitrator, with the Superior Court, or with the Law Court.

8

arbitrability.[8] However, once a proceeding was commenced before the Superior Court, the Superior Court's decision did not demonstrate any particular receptiveness to the four sisters' arguments, with Justice Cuddy stating, inter alia: "The evidence persuades the Court that by executing their Settlement Agreement, Plaintiffs had already voluntarily agreed to arbitrate before Mr. Crouter."

In this case, any argument that one forum would have been more receptive than another is speculative. Whether arbitration could have been successfully opposed or the arbitration award could have been vacated depends not on the forum but on the factual and legal merits of the dispute as to whether there was an agreement to arbitrate. *See* 14 M.R.S. §§ 5928(1), 5938(1)(E).

Plaintiffs' case, therefore, turns on whether Mills was professionally negligent in not advancing or pursuing an argument that would have been likely to prevail before the Superior Court and ultimately before the Law Court – specifically, that Mills had failed to pursue a viable argument that Budd had lacked authority to sign the Settlement Agreement on behalf of Anderson and Collins and that their claims were therefore not subject to arbitration.

On the issue of Budd's authority, the parties have offered evidence on two different legal theories. The first is whether Budd's execution of the Settlement Agreement on behalf of Anderson and Collins was binding under the doctrine of apparent authority. That doctrine is applicable when, even though actual authority to perform some act has not been granted, the conduct of the principal leads third parties to believe that the agent has such authority. *See, e.g., Remnes v. Mark Travel*

---

[8] Justice Cuddy was of the view that only the Superior Court had jurisdiction to consider proceedings to compel or stay arbitration under 14 M.R.S. § 5928(1). The Law Court refrained from expressly deciding that issue. *See* 2012 ME 6 ¶ 13 n.7. However, because it ruled that a post-arbitration motion to vacate was a valid avenue to challenge arbitrability, 2012 ME 6 ¶¶ 12-13, and thereafter focused on the Superior Court's decision – rather than on the Probate Court's prior decision – the Law Court decision suggests that the Superior Court was the appropriate forum to test arbitrability.

9

*Corp.,* 2015 ME 63 ¶ 22, 116 A.3d 466. The second is whether Budd had actual authority to execute the Settlement Agreement.

The question of Budd's authority was only litigated in the prior proceedings before the Probate Court, and it is evident that Probate Judge Patterson relied on the apparent authority doctrine in determining that Anderson and Collins were parties bound by the Settlement Agreement. *See* January 12, 2010 Probate Court Order (Exhibit D to Defendants' SMF) at 2-3, referring to evidence of what Anderson and Collins had stated to Crouter when they left the mediation. That evidence is part of the summary judgment record.

Specifically, Mills has offered evidence that Anderson and Collins had been present throughout a day-long mediation and that numerous drafts and redrafts of a settlement agreement had been discussed by Crouter in their presence. According to the evidence presented by Mills. when Anderson and Collins left the mediation at around 5:30pm, they were asked by Crouter whether Budd was authorized to continue with the mediation and sign any agreement on their behalf, and they answered in the affirmative. Probate Hearing Tr. 48 (testimony of Crouter), cited in Defendants' SMF ¶ 9; Probate Hearing Tr. 111-12 (testimony of Budd agreeing with the testimony of Crouter on that issue), cited in Defendants' SMF ¶ 10. At the probate hearing both Crouter and Budd testified that neither Anderson nor Collins had told Crouter that there were any limitations on Budd's authority. *Id.*

Plaintiffs have offered contrary evidence to the effect that Anderson had informed Crouter that Budd "knew what my requirements were and that Charles would be able to sign for me if those were met." Anderson Dep. in CV-13-183 at 51; Anderson Aff. ¶ 10, cited in Plaintiffs' SAMF ¶¶ 86, 110. However, the existence of a factual dispute as to apparent authority does not create a factual issue for trial in this case. This is because, regardless of any factual disputes on the

10

apparent authority issue, plaintiffs' expert has not offered any opinion that, faced with Crouter's and Budd's testimony at the probate hearing, Mills should nevertheless have attempted to argue that Budd was not cloaked with apparent authority to sign the settlement agreement. Instead, Lambert's opinion is that Mills should have pursued the argument that the apparent authority doctrine is simply inapplicable to an attorney's agreement to settle a case and that the only issue was whether Budd had actual authority. Plaintiffs' SAMF ¶¶ 144, 154.[9]

Plaintiffs have offered considerable evidence that Budd did not in fact have actual authority to execute the Settlement Agreement on behalf of Anderson and Collins. Specifically, they have offered deposition testimony and affidavits that before Anderson and Collins left the mediation, Anderson had advised Budd that she would not agree to certain aspects of the proposed settlement – that she would not give back any property deeded to her by her father, that she was not willing to see her mother at Constance Banks's home, and that Crouter was not acceptable as an arbitrator.[10] Probate Hearing Tr. 149-50; Anderson Dep. in CV-13-183 at 47-48, 50; Anderson Dep. in CV-16-06 at 66; Rebecca York Affidavit ¶ 6; Leila Johnson Affidavit ¶ 6, cited in Plaintiffs' SAMF ¶¶ 92, 94-94, 101-02. The executed Settlement Agreement deviated from all those instructions. For her part, Collins testified that she gave Budd authority but only "with

[9] This is confirmed by Lambert's expert designation, which sets forth the opinion that an actual authority argument should have been pursued but does not suggest that Mills should have attempted to pursue an alternative argument that even if apparent authority could be invoked, it could not be proven in this case. *See* Defendants' Ex. H at 5.

[10] Plaintiffs' SAMF devotes 25 paragraphs to the disputed issue of whether Crouter's demeanor at the mediation amounted to bullying. This was almost entirely unnecessary. Plaintiffs are not contending that Mills should have challenged the settlement agreement on the ground that their agreement had been coerced. Any evidence as to plaintiffs' discomfort with Crouter could have been limited to the assertion that they had advised Budd that they did not agree to allow him to serve as an arbitrator.

provisions" and that she had not agreed that her mother was competent. Probate Hearing Tr. 156, cited in Plaintiffs' SAMF ¶ 103.

For his part, Budd testified at the Probate Hearing that at the time he had signed the Settlement Agreement, he thought he was acting within his authority. Probate Hearing Tr. 112, cited in Defendants' SMF ¶ 15. However, the record also contains a December 2, 2009 affidavit from Budd that supports plaintiffs' claim that he had lacked authority to agree to certain provisions in the Settlement Agreement.

According to Budd's affidavit, Anderson had explicitly stated that she would not agree to convey any real estate to her brother and that Budd had no instructions with respect to the easement over her property that was part of the executed Settlement Agreement. Budd Aff. ¶ 5, cited in Plaintiffs' SMF ¶ 54. His affidavit also specifically states that Anderson had insisted that all meetings with her mother had to be in a public place and acknowledges that the eventual provision in the executed Settlement Agreement on that subject "deviates from Anderson's stated objective." *Id.* Finally, his affidavit states that in hindsight, he thought it was likely that none of his clients understood that they were surrendering all claims against William and Constance Banks – another aspect of the Settlement Agreement as executed. Budd Aff. ¶ 8, cited in Plaintiffs' response to Defendants' SMF ¶ 14. This evidence would be more than sufficient to create a disputed issue of fact for trial if, as plaintiffs argue, actual authority – rather than apparent authority – is required for a lawyer to execute a settlement agreement on behalf of his clients.

In support of that argument plaintiffs rely on language in decisions by the Law Court, by the First Circuit, by the District of Maine, and by the Superior Court. However, none of those decisions actually holds either that the apparent authority doctrine is never applicable to a lawyer's

12

agreement to settle a case or that actual authority – not just apparent authority – must exist in all cases before clients are bound by their attorneys' agreement to settle.

All of the cases agree that, as the Law Court stated in *Lane v. Maine Central Railroad*, "an attorney clothed with no other authority than that arising from his employment in that capacity has no power to compromise and settle or release and discharge his client's claim." 572 A.2d 1084, 1085 (Me. 1990), quoting *Perkins v. Philbrick*, 443 A.2d 73, 74 (Me. 1982). Both *Lane* or *Perkins* turned on whether authority may be found solely because of the attorney-client relationship. Neither case involved a situation where, as here, there was evidence that the clients had expressly told a mediator that their attorney was authorized to sign a settlement agreement.

The strongest argument for the proposition that actual authority – rather than apparent authority – is required for a lawyer's agreement to a settlement is contained in language in the First Circuit's decision in *Malave v. Carney Hospital*, 170 F.3d 217 (1st Cir. 1999). In that case Judge Selya wrote that "the doctrine of apparent authority may not be invoked in these purlieus" but went on to state

> Under hoary principles of federal common law, a general retainer, standing alone, does not permit an unauthorized attorney to settle claims on his client's behalf.

170 F.3d at 221 (emphasis added).

Judge Selya's opinion went on to state that "a settlement entered into by an attorney is ineffective if the attorney did not possess actual authority to bind the client" but included a footnote stating:

> We note in passing that the outcome would be the same were we to base our analysis on considerations of apparent authority . . . . The venerable principle that retainer alone does not suffice to vest a lawyer with settlement authority itself placed the Hospital on notice that [the lawyer's] statements did not suffice, without more, to bind Malave to a settlement agreement.

13

170 F.3d at 221 and n.6 (emphasis added).

The *Malave* footnote thus suggests that in an appropriate case the apparent authority doctrine could be available and does not foreclose the application of the apparent authority doctrine in cases where reliance is not placed on a "general retainer, standing alone," or on statements of the lawyer "without more."

In this case, as noted above, there is evidence that the clients had been presented with a number of drafts over the course of the mediation and that they had then had told the mediator that although they were leaving, Budd had authority to sign a settlement agreement. No comparable situation was presented in *Malave* or in any of the cases cited in the *Malave* decision.[11]

The remaining question is whether the Law Court, if presented with the issue, would hold that a settlement agreed to by a lawyer is not binding under any circumstances unless the lawyer had actual authority and that the apparent authority doctrine is not available even where there is evidence that the client expressly told a mediator that the lawyer had authority to sign a settlement agreement. This is an issue of law which would not appear to be appropriate for determination by a jury. *See Steeves v. Bernstein Shur Sawyer & Nelson,* 1998 ME 210 ¶¶ 15-18, 718 A.2d 186.

---

[11] The two other cases cited by plaintiffs are *Michaud v. Netlinxx of Maine Inc.,* 2014 U.S. Dist. LEXIS 141522 (recommended decision by Magistrate Judge Nivison filed Oct. 3, 2014), and *Rideout v. Jackrabbit Ltd.,* 2015 Me. Super. LEXIS 249 (Cumberland County Superior Court, order filed Oct. 25, 2015) (Horton, J.). *Michaud* repeated the "actual authority" language from *Malave* but did not involve any issue of apparent authority. *Rideout* noted in a footnote that the parties had not raised the apparent authority doctrine and that the record would not support an apparent authority argument. In the same footnote the court stated:

> [I]t is by no means clear that an apparent authority would be legally sufficient in this context. Neither party has cited to any Maine decision in which a settlement agreement made by an attorney on behalf of a client was enforced without proof that the client had assented to the terms of the settlement.

2015 Me. Super. LEXIS 249, *26 n.1.

The court concludes that if presented with the issue, the Law Court would not require actual authority but would allow parties to be bound by an attorney's agreement to settle in cases where the client had expressly stated that the attorney was authorized to agree to settlement proposals that the client knew were on the table. *See Remnes v. Mark Travel Corp.,* 2015 ME 63 ¶ 22.

This conclusion is consistent with Restatement 3d of the Law Governing Lawyers, § 27 (titled "A Lawyer's Apparent Authority"), which provides:

> A lawyer's act is considered to be that of the client in proceedings before a tribunal or in dealings with a third person if the tribunal or third person reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestations of such authorization.

Comment (a) to section 27 of the Restatement states that the act of retaining a lawyer does not confer authority in matters, such as approving a settlement, reserved for client decision. However, comment (b) goes on to state that even when actual authority does not exist, the doctrine of apparent authority is applicable to a lawyer's transactions with a third person "when the client has limited the lawyer's actual authority but the limitation has not been disclosed to [the third person] and, instead, the client has manifested to the third person that the lawyer has authority to act in the matter."

As a result, if Mills had pursued the actual authority issue in the Superior Court and in the Law Court, he would not have achieved a more favorable result. Defendants are therefore entitled to summary judgment. The remedy of a client whose attorney has agreed to a settlement when the attorney does not have authority is an action against the attorney – a remedy that Anderson and Collins have already pursued by suing Attorney Budd and Rudman & Winchell in CV-13-183.

15

The entry shall be:

Defendants' motion for summary judgment dismissing the complaint is granted. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: April 10, 2018

Thomas D. Warren
Justice, Superior Court

16