STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-20-426


CHRISTO KAPOTHANASIS,

        Petitioner

        v.                                        ORDER ON MOTION TO STAY
                                                  ARBITRATION OF COUNTERCLAIMS
PAUL KAPOTHANASIS,

        Respondent


Factual Background

        This motion stems from a business dispute between two brothers, Paul and Christo

Kapothanasis. The brothers are shareholders in four closely held Maine corporations, Prompto,

Inc., K Bros., Inc., EIC, Inc. and TK Properties, Inc. (the "Prompto Companies"). (Mot. ¶ 1.) The

businesses operated quick-service car lubrication stations in 25 locations across Maine and New

Hampshire. *Id.*

        Paul and Christo had another brother, Anastasios ("Tasso"), who was also a shareholder

in these companies. (Mot. ¶ 2.) The brothers' parents, Constantine ("Charlie") and Fredericka

("Effie") Kapothanasis, were also shareholders in some of these companies. Each of these

companies is governed by corporate Bylaws and a Shareholders' Agreement. The Shareholders'

Agreement concerns a number of topics, but is primarily concerned with governing the transfer

of shares, including restricting the transferability of shares and the redemption of shares upon the

death of a shareholder. (Mot. ¶ 3.) These Agreements contain an arbitration clause whereby the

parties agree to arbitrate any disputes relating to the subject matter of the Agreement. *Id.*

1

In 2006, Paul and Tasso executed a series of Joint Tenancy Assignments, which purported to place one share from each of the four Prompto Companies into joint tenancy. (Opp'n at 3.) As a consequence, upon one of their deaths, the other would inherit all four shares, assuming that the agreements were valid. On December 31, 2018, Charlie Kapothanasis died. (Mot. ¶ 2.) Pursuant to the redemption clause in the Shareholders' Agreements, the various corporations purchased his shares. Effie Kapothanasis died shortly thereafter, on January 4, 2019. *Id.* Her shares were also purchased by the corporation. Tasso Kapothanasis died on January 7, 2019.

After Tasso's death, Paul came forward asserting that these joint tenancy assignments gave him one more share in the corporation that Christo. (Mot. ¶ 5.) Thus, Paul asserted, he controlled the management of each of the Prompto Companies. *Id.* Paul then appointed himself the corporation's sole officer. In the meantime, the corporation had been investigating Christo's workplace conduct which concluded that while his conduct did not rise to the level of legally actionable harassment, he made some employees feel uncomfortable and had misappropriated company assets. (*See* Resp't's Ex. 4[1].)

Procedural Background

Christo filed an arbitration demand on September 2, 2020, with the American Arbitration Association challenging the Joint Tenancy Agreements as violations of the Shareholder Agreements. Paul filed an answer on September 17, 2020, in which he alleged several counterclaims. In Count 1 Paul seeks declaratory judgment that the Joint Tenancy Agreements are valid. Count 2 of those counterclaims alleges a breach of the Shareholder Agreements, Count 3 alleges a breach of common law fiduciary duties, Count 4 alleges a breach of statutory

---

[1] Exhibit 4 is the subject to a Motion to Seal filed by Christo which was granted on even date of this order.

2

duties under the Maine Business Corporations Act, Count 5 alleges the tort of conversion and Count 6 alleges unjust enrichment.

On September 24, 2020, Christo filed his Motion to Stay Arbitration as to Counts 2 through 6, pursuant to 14 M.R.S. § 5928(2). Christo claims that these counterclaims do not fall within the agreement to arbitrate disputes under the Shareholder Agreements and are therefore non-arbitrable. Paul filed his opposition to the motion on October 29, 2020. Christo replied on November 12, 2020.

Standard

A party wishing to challenge the substantive arbitrability of a dispute may either bring a motion to compel or stay arbitration under 14 M.R.S. § 5928 or may file a motion to vacate an arbitration award pursuant to 14 M.R.S. § 5938(1)(E), *Anderson v. Banks*, 2012 ME 6, ¶ 13, 37 A.3d 915. The final decision on substantive arbitrability lies with the court, not the arbitrator. *V.I.P., Inc, v. First Tree Dev.*, 2001 ME 73, ¶ 3, 770 A.2d 95.

"Maine has a broad presumption favoring substantive arbitrability," *Roosa v. Tillotson*, 1997 ME 121, ¶ 3, 695 A.2d 1196. This requires a finding that a dispute has been subjected to arbitration if "(1) the parties have generally agreed to arbitrate disputes, and (2) the party seeking arbitration presents a claim that, on its face, is governed by the arbitration agreement." *V.I.P., Inc.*, 2001 ME 73, ¶ 4, 770 A.2d 95 (quotation omitted). In other words, the court must find a dispute arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* General rules of contract interpretation apply. *Id.* ¶ 3.

3

### Jurisdiction

There are two questions before the court on this motion to stay. First, who has the authority to make a final determination on the arbitrability of disputes under these agreements, the court or the arbitrator? Second, if this authority rests with the court, did the parties agree to submit the challenged counterclaims to arbitration?

The first question breaks down into two subsidiary questions on which the parties disagree. First, the parties disagree as to whether Maine law allows for an arbitration agreement which submits questions of substantive arbitrability to the arbitrator. The other area of dispute is whether an agreement to arbitrate disputes under the Shareholder Agreements under the rules of the AAA demonstrates a clear intent to submit these questions to the arbitrator for a final determination.

Under Maine law, it is clear that the final decision on substantive arbitrability ordinarily lies with the court. *V.I.P., Inc.*, 2001 ME 73, ¶ 3, 770 A.2d 95. Paul cites *Westbrook School Committee v. Westbrook Teachers Association*, 404 A.2d 204, for the proposition that an exception to this rule exists where the parties intended the arbitrator to make final determinations on the substantive arbitrability of disputes and their agreement manifests a "clear demonstration of that purpose." 207 n.5 (Me. 1979). Christo disputes this reading of *Westbrook*, arguing that it and other case law establish that arbitrators may *never* make final decisions on substantive arbitrability, regardless of the parties' intentions.

*Westbrook* states, in the relevant part, "Anyone who claims that the parties to an arbitration agreement vested power in the arbitrator to make a final determination of substantive arbitrability, to the exclusion of the courts, must bear the burden of a clear demonstration of that purpose." *Westbrook School Committee v. Westbrook Teachers Association*, 404 A.2d 204, 207

4

n.5 (Me. 1979) (quotation omitted). However, that language comes from a footnote at the end of the following paragraph:

> Whenever raised, the issue presented is the same: Did the parties intend to submit the particular dispute to arbitration? It is well settled that the final decision on the question of substantive arbitrability is the function of the court, not of the arbitrator. To hold otherwise would be to give the arbitrator the extraordinary power of determining his own jurisdiction, to the exclusion of the courts or any other authority.

*Westbrook*, 404 A.2d at 207 (Me. 1979) (citations omitted). Christo urges the court to read this paragraph to the exclusion of the footnote and hold that substantive arbitrability is always a threshold question for the court to decide. However, if the Law Court had not intended to leave open the possibility that parties might decide to leave such questions to the arbitrator, surely it would not have qualified this paragraph with a footnote. The better reading is that the Law Court was not faced with the exact question of whether parties could leave the final decision on substantive arbitrability to the arbitrator and left open the possibility, while clarifying that the considerations surrounding such a delegation require a higher standard of proof for a court to read that intent into an arbitration agreement.

This reading of *Westbrook* is consistent with subsequent case law. In *Anderson v. Banks*, cited by Christo to support his claim that decisions on substantive arbitrability must always be left to the court, the question of the arbitrator's jurisdiction to decide that question was not raised by any party. 2012 ME 6, 37 A.3d 915. Christo also cites *AFSCME, Council 93 v. State* for this proposition. 635 A.2d 950 (Me. 1993). In *AFSCME*, the relevant arbitration clause provided that "in the event a disagreement exists regarding the arbitrability of an issue, the arbitrators shall make a preliminary determination whether the issue is arbitrable under the express terms of this Agreement." *Id.* at 952 n.2. This agreement plainly states that the arbitrator was only empowered

5

to make a preliminary determination, whereas the question in front of this court is whether an

arbitrator can be empowered to make a *final* determination to the exclusion of the courts.

Given that parties may apparently choose to leave final decisions on arbitrability to the

arbitrator, the more precise question the court must answer is whether an agreement to arbitrate

under the rules promulgated by American Arbitration Association (AAA) clearly demonstrates

that purpose. Rule R-7(a) states:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any
> objections with respect to the existence, scope, or validity of the arbitration agreement or
> to the arbitrability of any claim or counterclaim.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures R.

R-7(a) (2013). The First Circuit has held that this language evinces "clear and unmistakable"

intent to leave substantive arbitrability to the arbitrator when incorporated by reference into an

arbitration clause governed by the Federal Arbitration Act (FAA). *See Awuah v. Coverall N.

Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009). This case is governed by the Maine Uniform

Arbitration Act (MUAA), but "the language of the FAA and the MUAA are substantially

similar" and Maine courts may use case law interpreting the FAA to guide their interpretation of

the MUAA's similar provisions. *HL 1 LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 22, 15 A.3d 725.

The First Circuit's holding does not resolve the matter, however. For one thing, the

arbitration clause the court faces today is a more narrowly tailored one, which expressly limits its

coverage to topics under the agreement. Second, there is a key difference between *Riverwalk*,

where the court used federal law to guide its interpretation of the MUAA, and this case. The

matter at issue in *Riverwalk* was whether the parties could contract to expand the court's role in

the arbitration process. The court analyzed the statute and held that it had to be given a strict

interpretation and that the court's role could not be enlarged by contract. Importantly, however,

6

*Riverwalk* also notes that there are two grounds for vacating an arbitration award under the MUAA that are not present in the FAA. For our purposes, the important one is:

> E. There was no arbitration agreement and the agreement was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection;

14 M.R.S. § 5938(1)(E). In other words, the MUAA has an explicit provision requiring a court to vacate an arbitration award if it determines that the dispute was not arbitrable. Holding that this provision may be nullified by the parties' agreement without any statutory language to that effect would seem to run counter to *Riverwalk*'s requirement that the court stick closely to the text of the MUAA. Thus, the court cannot rely on FAA cases to interpret this provision.[2]

In light of the standard set out by *Westbrook*, which requires a "clear demonstration" of the parties' intention to leave questions of arbitrability to the arbitrator, the court cannot find that the incorporation of the AAA rules establishes that the parties intended to do so. Rule R-7(a) does not explicitly state that the arbitrator has the authority to make a *final* determination on his or her jurisdiction, it simply states that he or she has "the power to rule" on it. This leaves some ambiguity as to the exact nature of this power: is it the power to make a preliminary decision that a court may review or is it the power to have the last and only word on one's own jurisdiction? Given the clear preference for courts to maintain jurisdiction over questions of arbitrability under Maine law, the court will not read an intent to give the arbitrator final authority over his or her

---

[2] Given the statute and the holding of *Riverwalk*, it is questionable whether parties actually could choose to leave questions of arbitrability to the arbitrator. *Riverwalk* decided something of the inverse of this question, that parties could not enlarge the court's role in the arbitration process because the statute was to be strictly adhered to. By the same token, it would stand to reason that parties may not shrink the court's role beyond what is explicitly allowed by the statute. This, of course, would seem to contradict *Westbrook*. However, the court does not reach this question here, as the issue before it is narrower: whether, for purposes of Maine law, an incorporation of the AAA rules into an arbitration agreement demonstrates a clear purpose to leave arbitrability to the arbitrator for final decisions. Because the court rules that it does not, it need not address this apparent contradiction.

7

own jurisdiction into this somewhat ambiguous rule. The court will now turn to the question of the substantive arbitrability of Paul's claims.

## Substantive Arbitrability

The court now moves on to address the substantive arbitrability of Paul's counterclaims under the Shareholder Agreements. These counts largely break down into three species of claim; breach of contract, breach of fiduciary duties and claims based on Christo's alleged misappropriation of corporate property. There is some overlap between the factual basis for each of these claims, but the court will address these three categories separately in the interest of clarity.

"Maine has a broad presumption favoring substantive arbitrability." *Anderson v. Banks*, 2012 ME 6, ¶ 19, 37 A.3d 915 (quotation omitted). This presumption requires the court to find that a dispute is arbitrable if "(1) the parties have generally agreed to arbitrate disputes, and (2) the party seeking arbitration presents a claim that, on its face, is governed by the arbitration agreement." *V.I.P., Inc. v. First Tree Dev.*, 2001 ME 73, ¶ 4, 770 A.2d 95. This legislative policy is so strong that "a court will find a dispute arbitrable unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

The arbitration clause at issue provides that "any dispute between the parties to this Agreement with respect to any matter covered by this Agreement shall be settled by arbitration." (Shareholder Agreement ¶ 13.) This language clearly demonstrates a general agreement to arbitrate disputes, but only with respect to matters covered by the Shareholder Agreement. The Shareholder Agreement and its amendments lay out various restrictions and purchase options relating to the transfer of shares. (*See generally* Pet'r's Ex. A.) The agreement does not reference

8

the bylaws of the corporation or discuss any duties that the parties may owe the corporation in their capacity as corporate officers. *Id.* It is limited to duties and rights that concern the parties as shareholders.

Count 2 of Paul's counterclaims is a breach of contract claim. He alleges that Paul's conduct has violated the Shareholder Agreement in various ways. While it may not be entirely clear from the face of Paul's counterclaims what conduct he specifically alleges breached the Shareholder Agreement, this claim at least "on its face, is governed by the arbitration agreement." *V.I.P.*, 2001 ME 73, ¶ 4, 770 A.2d 95. If Paul alleges that Christo breached the Shareholder Agreement, this is an arbitrable claim, whatever its merits may be.

The same cannot be said for Counts 3 and 4. These claims both allege breaches of fiduciary duties under common law and statute. (Pet'r's Ex. 2.) However, the arbitration clause specifically restricts itself to matters covered by the Shareholder Agreement. Nothing in the Shareholder Agreement allows the court to conclude that the parties agreed to submit their common law and statutory duties to arbitration. Paul argues that the court should find these claims arbitrable because the conduct underlying them is related to their arbitrable disputes. This is not the law. The only question the court must answer, the only one it *can* answer, is whether the parties agreed to submit these matters to arbitration. Except to the extent that Paul is claiming that the Shareholder Agreement created a fiduciary duty that Christo owed him and his conduct breached that duty, these claims do not relate to matters covered by the Shareholder Agreement and therefore are not arbitrable.

Counts 5 and 6 are not arbitrable either. These two claims allege torts that Christo allegedly committed, largely centered on misuse and appropriation of corporate property. This has nothing to do with the matters covered by the Shareholder Agreement. The fact that evidence

9

of certain conduct could be used for two types of claims does not mean that the parties agreed to

arbitrate both types. There is no ambiguity here, these claims are not arbitrable under the

arbitration clause.[4]

 

        The entry is[4]

            Christo Kapothanasis' Motion to Stay Arbitration of Paul
Kapothanasis' counterclaims is GRANTED as to Counts 3
and 4, except insofar as these arise out of alleged fiduciary
duties created by the Shareholder Agreement, is GRANTED
as to Counts 5 and 6, and is DENIED as to Count 2.

            Paul Kapothanasis' Motion to Compel Arbitration of his
counterclaims is GRANTED as to Count 2, is DENIED as to
Counts 5 and 6, and is DENIED as to Counts 3 and 4, except
insofar as these arise out of alleged fiduciary duties created
by the Shareholder Agreement.

            The Clerk is directed to enter this order into the docket by
reference pursuant to M.R.Civ.P. 79(a).

Date: Dec. 15 , 2020

                                       Harold Stewart, II
                                       Justice, Superior Court

Entered on the Docket: 12/15/2020

---

[4] It is not lost on the court that it would be more efficient if all of Paul and Christo's disputes could be addressed at a single arbitration proceeding, allowing them to get all matters resolved and behind them. Yet at the same time, Christo's Statement of Claim focuses only on the legitimacy of the shares transferred between Paul and Tasso and whether such transfers violated the Shareholder's Agreement. At this juncture, as decided herein, the court's role is restricted to determining what claims are arbitrable under the arbitration clause.
[4] There is no dispute raised by the parties that Count 1 of the counterclaims is not subject to arbitration.